(Decided 21st June, 1876.)

---

# The Cumberland and Pennsylvania Railroad Company *vs.* The State, use of Mary Hogan and Mary Ellen Hogan.

*Railroad Company—Explosion of a Locomotive engine—Death of an Employé—Question of Negligence—Legal sufficiency of Evidence to go to the Jury.*

H. employed as an engineer on a railroad was killed by the explosion of the locomotive engine of which he had charge. An action was brought against the railroad company for the use of the widow and minor child of the deceased, to recover damages sustained by them by reason of his death.

There was no evidence of negligence on the part of the defendant in the selection of faithful and competent employés. The ground of the action and the liability of the defendant rested upon the alleged facts that the engine was unsound and unsafe when it was purchased and put upon the road, and so continued till the time of the accident, and that the agent of the defendant, by whom it was purchased, did not exercise ordinary care in purchasing and procuring a sound and safe engine. Evidence was offered by the plaintiff as to the purchase of the engine, the explosion of which occasioned the death of H. The defendant proved that the engine was repaired about a month before its explosion, and alleged that there was no evidence of the original and continued unsoundness of the engine and of the alleged negligence of the defendant in procuring it    Held :

That there was evidence on these questions legally sufficient to go to the jury, and they were properly submitted to their decision.

APPEAL from the Circuit Court for Howard County.

This suit was instituted in the Circuit Court for Allegany County. Upon the suggestion and affidavit of Mary Hogan, one of the equitable plaintiffs, the record of proceedings was transmitted to the Circuit Court for Howard County, where the case was tried.

*Exception.*—The plaintiff to support the issue on its part proved the death of Thomas Hogan, by the explosion of engine No. 22, of which he was the engineer, and that he left a widow and one child. The plaintiff further proved by William L. Jordan that he was the defendant's master of machinery at the time the engine, which exploded, was purchased; that he was sent by Mr. Slack, the superintendent of the defendant's road, to Harrisburg, to buy two engines; that he went there, and then went on to Sunbury, where he examined two engines, Nos. 97 and 98; that 98 was afterwards known as No. 22; that after examining the engines, as well as he could, he went to Baltimore and saw the boiler-maker, and questioned him as to what he had done to these engines; that after talking to him, he concluded from the information received from him, to take only one of them, No. 97, (which the defendant now has,

known as No. 23;) that witness made no personal exami-
nation, except on the outside; that he considered No. 97
safe; that he inquired of the boiler-maker the age of No.
98, but he could not tell it; that witness telegraphed to
Mr. Dalton, the President of the appellant, and Mr. Slack,
its General Superintendent, and advised them not to buy
but one, viz., No. 97; that Mr. Du Barry, the vice-presi-
dent of the Northern Central Railway Company refused
to sell one without the other, and witness then said he
would buy neither, unless ordered to do so by his Com-
pany; that witness was afterwards ordered, to purchase
the engines for the appellant, and did so; the witness
further stated, that he did not ascertain their age, but
learned that the Northern Central Railway Company, of
whom the appellant purchased the engines, had itself
bought them second-hand; the witness further stated,
that after these engines came upon the appellant's road,
he suggested to Mr. Slack that the time had come for sup-
plying some of their engines with new boilers, but that he
did not specify any particular engine, nor was he ordered
to do it. Upon cross-examination the witness said that he
did not consider that he bought engine No. 22; that from
his examination of it, he did not think it was policy to buy
it, that his judgment was that the two engines looked the
same, equally good, the machinery was quite as good, but
he could not see the inside, and No. 97 had had more
repairs put upon it than No. 98, which made the former
safe.

The plaintiff further proved by Daniel Moran that he
discovered a crack about two feet long in the second front
sheet underneath of the boiler; that the engine was after-
wards sent to Mount Savage and a patch put over it; at
another time he saw another crack in the same sheet about
eight inches long; it was again sent to Mount Savage and
a patch put over this.

The defendant then, to support the issue on its part
joined, proved by Cornelius Slack as follows:

I was in the service of the defendant for twenty-two years, as General Superintendent and left its service in the spring of 1874; as Superintendent I received engine No. 22, and paid for it; the amount paid for the two engines was $20,000; I knew of no defect in the boiler of this engine or in its machinery at the time we bought it and put it in use on our road; it was the duty of the engineers to report defects in the engines, and they were not required to run unsafe engines, and I would not have permitted a defective engine to be put or kept in use on the road; whenever repairs were reported or found necessary, they were at once put upon the engines; Jordan, the master of machinery, McCuan, our boss boiler-maker, and Strain and Lowery, our foremen in the shops, were all first-class men in their several positions; the engineers were selected and employed by the master of machinery.

The defendant further proved by Joseph McCuan that his duty was to inspect the engines every day when they came in, and say whether they should go out again or not until repaired—and that he did attend to this duty faithfully; that when he was absent, which sometimes happened of course, he appointed some one in his place; he repaired engine No. 22 about a month before the explosion; they had her all to pieces and marked all the defective places; he examined the boiler thoroughly himself, and cut out the defective parts; he got in the boiler himself and tried it with a hammer, and put her in thorough and complete repair; he left everything good, superintending the whole thing and doing a part of the work himself; all the defective parts were taken out and new pieces put in their place.

The defendant further proved by Neil W. Howson, as follows: I am employed by the defendant as chief foreman in the machine department; I knew engine No. 22, and saw it in the shops in March, 1874; I examined it as was my duty; I went into the boiler with Mr. McCuan,

and we sounded it and repaired all the defects thoroughly; there was no other way of repairing it than the one we adopted; after that repairing we considered it in first-class order for that kind of engine; it was not in the shop after that; it is the duty of the engineer to report the condition of his engine, and there was no report as to the condition of this engine; Hogan had been running as engineer of No. 22 for eight or nine months; I saw the engine after the explosion; the iron was good.

The plaintiff prayed the Court to instruct the jury as follows:

1. That if they shall find from the evidence that the defendant owned and worked a railroad from Cumberland, Md., to Westernport, Md., during the year 1874, and that Thomas Hogan, husband of the equitable plaintiff, Mary Hogan, and father of the equitable plaintiff, Mary Ellen Hogan, was employed by the defendant as a locomotive engineer on one of its engines on said road in the month of May in said year, and that during said month said engine exploded, and that by said explosion the said Thomas was killed while exercising due care and diligence on his part; and if they shall further find, that at the time of said explosion said engine was unsound and unsafe, and that ordinary care had not been used by the defendant in procuring a sound and safe engine instead of such unsound and unsafe one, then the plaintiff is entitled to recover, and the jury may award such damages as they think proportioned to the injury resulting from such death to the widow and minor child of said deceased for whose benefit this action is brought.

2. That if the jury shall find the defendant did not use reasonable care in procuring sound machinery, and that by reason of such failure Thomas Hogan, husband of Mary Hogan, and father of Mary Ellen Hogan, the equitable plaintiffs, was killed by the explosion of a locomotive boiler, the property of the defendant, on or about the 5th

day of May, 1874, whilst employed thereon as a locomotive engineer, and whilst in the discharge of his duty as such locomotive engineer, and that said Thomas Hogan was, at the time of such explosion, using ordinary care in and about his said employment, then the plaintiff is entitled to recover in this action.

3. That if the jury should find for the plaintiff, then, in assessing the damages, they are to estimate the reasonable probabilities of the life of the deceased Hogan, and give the equitable plaintiffs such pecuniary damages not only for past losses, but for such prospective damages as the jury may find that they have suffered or will suffer as the direct consequence of the death of said Hogan ; that for his child these prospective damages may be estimated to its majority, and as to the widow to such probability of life as the jury may find reasonable under the circumstances.

4. That if they shall find a verdict for the plaintiff, then in estimating the damages to be allowed to Mary Hogan, widow of the deceased, it is not proper for them to assume or consider the possibility or probability of her remarrying.

And the defendant's counsel offered the following prayers:

1. If the jury shall believe from the evidence, that the deceased Hogan was an engineer in the employment of the defendant and in charge of engine No. 22, and that an explosion took place in said engine while the said Hogan was running it, and that by said explosion the said Hogan lost his life, and that the explosion was not owing to any want of reasonable care on the part of the said defendant, or on the part of some of its servants other than said Hogan, then the plaintiff is not entitled to recover.

2. If the jury believe from the evidence that Thomas Hogan at the time of his death was an engineer in the employ of the defendant, and acting as such, and that he

was killed by an explosion of the engine which he had in charge, and that said explosion was caused by the boiler of said engine being defective and out of order, and that such defective condition was owing to the negligence of other servants of the defendant, whose duty it was to see that none but engines in good condition should be put in service or used; still the plaintiff cannot recover in this action unless the jury are satisfied from the evidence that in selecting the employés or servants through whose negligence the accident occurred, the defendant did not use reasonable care in procuring for its operations faithful and competent employés, and that there is no evidence in this case of the want of such reasonable care by the defendant in the selection of its said agents, and that therefore their verdict must be for the defendant.

3. If the jury shall believe that the explosion, whereby Thomas Hogan was killed, was caused by the boiler of the engine in his charge as engineer, being in an unsound and defective condition, and that such defective condition was owing to the carelessness or negligence of the agents or employés of the defendant, whose duty it was to see that the locomotive in question was in good order before being put in use by the defendant, yet the plaintiff cannot recover unless the jury shall be satisfied from the evidence, that the defendant did not use reasonable care in procuring for its operations competent and faithful employés, and sound machinery; and further, that in this case the plaintiff has offered no evidence to show that such reasonable care was not used by the defendant, and therefore their verdict must be for the defendant.

4. That if the jury find from the evidence in the cause that the engine in controversy was purchased in 1869, and that it was then a good and serviceable engine fit for the service required of it, except that it had not been as fully repaired as it should be, and that it was afterwards and before the accident complained of, put in good and thorough

repair, then such purchase does. not prove negligence in the defendant.

5. That there is no sufficient evidence in this case to prove that the defendant was negligent in the employment of any of its agents, whose duty it was to provide and keep in good and safe condition the engine in controversy in this cause, or that it knew of any defect in said engine; and even if they should find that the injury complained of was caused by the negligence of any of the said agents, the plaintiff cannot recover.

6. That if the jury shall find from the evidence that the witness Jordan was master of machinery for the defendant in 1869, when the engine No. 22 was purchased by the defendant, and that he remained as such until after the occurrence of the injury complained of in the declaration, and that it was his duty to inspect the engines used upon said defendant's railroad, and to see that they were in thorough repair and that no unsafe engine should be used on the said road, and if they shall further find that the said Jordan was a competent and careful officer, fit for the position in which he was placed, and that he did, from time to time, inspect the said engine No. 22, and had the same repaired from time to time, and particularly a short time before the occurrence of said injury, and that the said engine was not reported by the said Jordan as unsafe or in any way unfit for service, then the plaintiff is not entitled to recover.

7. That there is no evidence that the defendant did not use reasonable and proper care in the selection of faithful and competent employés, and that the plaintiff is not entitled to recover unless the jury shall find from the evidence that it did not use reasonable care in procuring locomotive engine No. 22, and unless they shall further find that said engine was in fact unsafe and unsound in September, 1869, when it was procured, and that such unsoundness continued down to the time of the explosion, notwithstanding the

repairs which they may find were from time to time put upon it, and that the burden of proving such original and continued unsoundness rests upon the plaintiff.

8. That to authorize a recovery in this case, the jury must find from the evidence that engine No. 22, was in fact unsafe and unsound when it was purchased and put in use by the defendant upon its road, and that notwithstanding the repairs put upon it from time to time by the defendant, as testified to by the witnesses, McCuan, Jordan and others, such unsoundness continued down to the time of the explosion and occasioned the same.

9. If the jury believe from the evidence that William L. Jordan, the defendant's master of machinery, in September, 1869, declined to recommend the purchase by the defendant, of engine known as "No. 22," because, upon his examination of it and inquiries into its history, he was not satisfied as to its soundness and sufficiency; and that notwithstanding his refusal to recommend its purchase, it was purchased under the orders of the President of the defendant; yet the plaintiff is not entitled to recover, if the jury shall further find, that after the purchase of said engine, but before it was put into use by the defendant, it was examined by said Jordan and pronounced by him fit and sufficient for use upon the defendant's road, and that from time to time afterwards it was examined and repaired so as to be maintained in good condition and fit for the service for which it was intended; provided the jury shall further find that the defendant used reasonable care in selecting said Jordan as its master of machinery.

10. That the burden is upon the plaintiff in this cause to prove that the injury complained of was not caused by the want of ordinary care on the part of Thomas Hogan, the party in charge of the engine at the time of the accident, and also to prove that it was caused by the negligence of the defendant in failing to provide a safe and suitable engine, and if it fails in either of those par-

ticulars the plaintiff cannot recover. And further, that if they should even find that the boiler in controversy was unsafe and unfit for use, and that its condition was known to said Thomas Hogan, or could have been known to him by the use of reasonable and proper care, then the plaintiff cannot recover.

The Court, (MILLER and HAMMOND, J.,) in lieu of the plaintiff's first and second prayers, which it refused, gave the following instruction:

If the jury shall find from the evidence that engine No. 22, spoken of by the witnesses, was unsound and unsafe at the time it was purchased by the defendant and placed on their railroad, by reason of its having a defective, unsafe and unsound boiler, and the explosion of the same in May, 1874, was occasioned by such defective, unsound and unsafe condition of said boiler continuing unrepaired down to the time of such explosion, and that thereby Thomas Hogan, the husband of the equitable plaintiff Mary, and the father of the equitable plaintiff, Mary Ellen, an employé of the defendant as engineer of said engine, was killed whilst exercising due care and diligence in the management of the same, and shall further find that the defendant did not exercise ordinary care in purchasing and procuring a sound and safe engine, instead of such unsound and unsafe one, then the plaintiff is entitled to recover in this action.

The Court granted the plaintiff's third and fourth prayers, and granted the defendant's first, fourth, seventh and eighth prayers, and rejected the rest.

To the granting of the instruction by the Court in lieu of the plaintiff's first and second prayers, and also to the granting of the plaintiff's third and fourth prayers, and to the rejection of the defendant's second, third, fifth, sixth, ninth and tenth prayers, the defendant by its counsel excepted.

The jury rendered a verdict in favor of the plaintiff for $8000, the same being apportioned between the widow and

the child. Judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, STEWART and ALVEY, J.

*R. H. Gordon* and *J. H. Gordon,* for the appellant.

*William Brace* and *Henry W. Hoffman,* for the appellee.

BARTOL, C. J., delivered the opinion of the Court.

Thomas Hogan the husband and father of the equitable plaintiffs was employed as an engineer on the appellant's railroad, and was killed on the 5th of May 1874 by the explosion of locomotive engine No. 22 of which he then had charge. This suit was brought to recover damages sustained by his widow and minor child by reason of his death. The appeal is by the defendant, and brings up for review the rulings of the Circuit Court upon the prayers, and the instruction given by the Court to the jury.

The accident which caused the death of the engineer is the same as that by which *Moran* the fireman was killed, and which gave rise to the suit of the *State, use of Moran,* decided at the last term, (44 *Md.,* 283.) The decision of Moran's case has settled several of the questions which were raised by the prayers of the appellant, and has very much narrowed the subjects open for discussion on the present appeal.

In this case there was no evidence of negligence on the part of the Company in the selection of faithful and competent employés; the ground of the action and the liability of the defendant rested upon the alleged facts that the engine was unsound and unsafe when it was purchased and put upon the road, and so continued till the time of the accident, and that the agent of the defendant, by whom it was purchased, did not exercise ordinary care in

purchasing and procuring a sound and safe engine.   These facts were submitted to the jury, by the instruction given by the Court, and by the defendant's fourth, seventh and eighth prayers which were granted.

It was decided in Moran's case that "it was the duty of the defendant to supply, as far as it could be done by the exercise of due and proper care, safe and sound machinery ; that the persons authorized to make the selection of and purchase the engine, must be taken as the representatives of the defendant, and any omission or neglect committed by them must be regarded as that of the defendant and for which it is liable."

It was held that the agents thus entrusted with the duty of purchasing the engine, are not to be regarded in that respect as the fellow-servants of those operating it.   There was therefore no error, as matter of law, in submitting to the jury the question of negligence in procuring the engine and putting it upon the railroad.   But the appellant alleges that "there was no evidence of the original and continued unsoundness of the engine and of the alleged negligence of the defendant in procuring it."   And this is the only question presented for our decision on the present appeal.   In disposing of this question it is not our duty, nor have we the power to decide what weight ought to be given to any part of the testimony, that was a matter for the jury to determine.   We can do no more than ascertain whether there was any evidence *legally* sufficient to be submitted to the jury, upon these questions of fact.   Without undertaking to recapitulate the testimony in the cause, we are all of opinion, upon a careful examination of the record, that there was evidence on all these questions, legally sufficient to go the jury, and that the Circuit Court committed no error in submitting them to the decision of that tribunal, whose exclusive province it was to judge of the weight of the testimony and the inferences of fact to be drawn from it.

This being, as stated in the appellant's brief, the only question presented for our decision, it is unnecessary to notice more particularly the several prayers of the defendant, which were rejected. Finding no error in the rulings of the Circuit Court the judgment will be affirmed.

*Judgment affirmed.*

(Decided 22nd June, 1876.)