MARGUERITE V. TABOR v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, Appellant.

### Division Two, March 17, 1908.

1. **NEGLIGENCE: Open Switch.** After the conductor and engineer have received notice that a car is broken down on the main track at a named station, and are directed to use the passing track there, it is negligence in the engineer to run the train into an open switch at the station at a speed of fifty or sixty miles an hour, and of the conductor to permit him to do so without signal to slow up.

2. **————: Fellow-Servants: Master Mechanic: Engineer.** It was the master mechanic's right and duty to ride on the engine to observe its working, and having been informed that the engine of the passenger train could not be properly fired and that the train for that reason lost time he rode on the engine to dis-

210 Sup—25

Tabor v. Railroad.

cover what the defect was. Before mounting it, he heard the conductor read to the engineer a message from the train-master that there was a broken-down car on the main track at a station ahead, and to take the passing track at that place. The engineer ran the train into the open switch at a speed of fifty or sixty miles an hour, it was derailed, and the master mechanic was killed, and his wife sues for damages. The plaintiff's evidence tended to prove that the master mechanic was the superior of the engineer as to any mechanical defect in engines, and of all repairs thereof, and had a clear right to ride on the engine to discover its defects, but that he had no control over the movement of the engine or its speed, and that the engineer and conductor are subject to the orders of the train-dispatcher alone. Defendant's evidence tended to prove that the master mechanic was the engineer's superior officer in all respects, and that the latter was subject to his orders as to the movements of the train. *Held*, that, from either point of view, the engineer and master mechanic were in no sense fellow-servants of the same grade engaged in a common service.

3. ———: ———: ———: **In Operating Train.** The master mechanic being engaged in the construction and repair department of the railroad company, and the engineer and conductor in the operating department—the moving of the train under the direction and control of the train-master through the train-dispatcher—and the rules of the company giving conductors "entire charge of the trains to which they are assigned and all persons employed thereon", the conductor was, under the statute (Sec. 2874, R. S. 1899), the company's vice-principal, and in no sense was the master mechanic a fellow-servant of either the engineer or conductor.

Appeal from Jefferson Circuit Court.—*Hon. Jos. J. Williams,* Judge.

AFFIRMED.

*Martin L. Clardy* and *James F. Green* for appellant.

(1) The master mechanic was a fellow-servant with the conductor and engineer in charge of the train, and hence no cause of action exists in behalf of plaintiff. R. S. 1899, sec. 2875; Root v. Railroad, 195 Mo. 368; Grattis v. Railroad, 153 Mo. 402; Schaub v. Railroad, 109 Mo. 74; Wood on Railroads, sec. 388; Parker

v. Railroad, 109 Mo. 362; McDermott v. Railroad, 30 Mo. 115; Rohback v. Railroad, 43 Mo. 187; Higgins v. Railroad, 104 Mo. 413; Valtz v. Railroad, 85 Ill. 500; Kelley v. Railroad, 127 Ill. 637.    (2)  The right of action given by section 2873, Revised Statutes 1899 (Laws 1897, p. 96), is one in favor of the party in- jured only, and such cause of action does not survive where death ensues.

*Byrns & Bean* and *H. B. Irwin* for respondent.

(1)  Plaintiff was entitled to maintain this action and to recover for the negligent killing of her husband. R. S. 1899, secs. 2864, 2865, 2866, 2873; Renard v. Rail- road, 164 Mo. 286; Powell v. Railroad, 162 Mo. 605; Philo v. Railroad, 33 Iowa 50; 12 Am. and Eng. Ency. Law (2 Ed.), 978.   (2)  Plaintiff's husband and the en- gineer and conductor were not fellow-servants.  R. S. 1899, secs. 2874 and 2875; Railroad v. Furry, 114 Fed. 898; Railroad v. Ross, 112 U. S. 377.

GANTT, J.—This is an action commenced in the circuit court of Jefferson county July 19, 1904, for five thousand dollars damages, on account of the al- leged negligent killing of plaintiff's husband by the defendant.  As the recovery in the circuit court was on the first count, it will suffice to state that much of the petition.

It is alleged first that the defendant is and was at all times mentioned a railroad corporation organized under the laws of this State, and owned and operated a line of steam railroad in this State. "Plaintiff states that on the 30th day of April, 1904, she was the lawful wife of A. E. Tabor, and that at said time the said A. E. Tabor was employed by the defendant as master mechanic, and that as such master mechanic it was the duty of said A. E. Tabor to pass over defendant's railroad and to ride on its engines and trains.  That

on the day aforesaid said A. E. Tabor, acting in the line of his duties, was riding over defendant's road on an engine which was in charge of the defendant's servants and agents, and attached to one of defendant's passenger trains, and that the agents and servants of defendant in charge of the defendant's said engine and train acting in the line of their duties negligently and carelessly ran said engine and train at a high rate of speed into an open switch on the line of defendant's road near Wicks Station, whereby said engine and train were wrecked and thrown from the track, and that said A. E. Tabor sustained injuries thereby from which he died on the day aforesaid, and without any negligence on his part contributing thereto. Plaintiff states that she is the widow of said A. E. Tabor, deceased, and her said husband was killed because of the negligence of the defendant's agents and servants aforesaid. That plaintiff was dependent on her deceased husband for her support, and that she has suffered great pecuniary loss and has been otherwise greatly injured by the death of her said husband to her damage in the sum of five thousand dollars, for which she prays judgment with costs of suit."

Defendant filed an answer which consists, first, of a general denial, except that the defendant was a railroad corporation as alleged; second, a plea of contributory negligence on the part of the deceased. The reply was a denial of the new matter alleged.

The case was tried at the January term, 1905, of the Jefferson County Circuit Court, and resulted in a verdict for the plaintiff for five thousand dollars. On the trial the following facts appeared in evidence:

The plaintiff is the widow of A. E. Tabor, and at the time of his death Mr. Tabor was the master mechanic of the defendant on the Missouri Division of the St. Louis, Iron Mountain and Southern Railway, with his headquarters at DeSoto, Missouri, and had been

so employed for about eight months. On the morning
of the 30th of April, 1904, A. E. Tabor got on the
engine that was pulling train number 18 on defendant's
road at DeSoto, stating to his wife that something
was the matter with the engine and he was going to
ride on it. Mrs. Tabor also got on the same train in
one of the passenger coaches. J. C. Austin was the
conductor in charge of said train number 18, which
was on its way north that morning to St. Louis. He
testified that his train left DeSoto about seven o'clock
on the morning of April 30th; that John Bailey was
the engineer in charge of the train. He received the
following order at DeSoto:

"DeSoto, 4—30, 1904.
"Train 31,
    Order No. 4.
"To all north-bound passenger trains: There is a
car broken down on main track between passing track
switches at Wicks. All trains will use Wicks passing
track for main line. Run carefully passing Meramec
spur.                               J. W. D."

The conductor testified he delivered a copy of this
order to the engineer and compared it with his clear-
ance card, and the engineer read the order to him;
that this all occurred while they were standing at
the scale house at DeSoto and while the engine was
standing at that point; that thirty or forty seconds
after giving this order to the engineer, the train pulled
out. Wicks passing track is about twenty-three miles
north of DeSoto and the train was running between
50 and 60 miles an hour when it reached this passing
track, and the engine, two coaches and three sleepers
were derailed. The conductor testified that when near
the switch, he got up to go to the platform to signal
the engineer, when the train ran into the switch and

was derailed; that the switch was open, that is, thrown for the side track or passing track, and that this was the track which they had the order to go through. The conductor testified that Mr. Tabor, the deceased, was standing by him at the time he read the order to the engineer. He further stated that the train had lost time between Piedmont and Bismarck, because there was something the matter with the engine, it would not make steam. He testified further that a person on the right side of the engine going north could see the south end of the Wicks switch for about three-fourths of a mile before reaching it; that the engineer sat on the right-hand side of the cab and the fireman on the left. The witness had no conversation with Mr. Tabor that morning. The conductor also testified that the master mechanic had nothing to do with the giving of orders and directing the running of the train; that the directions in regard to running the train were received from the train master, J. W. Daniels. That the master mechanic, Mr. Tabor, had nothing whatever to do with giving directions or giving the order in question; that the engineer received his orders from the same source that the conductor received his, and was not under the control of the master mechanic as to the matter of running trains. Witness did not know until he met Mr. Tabor that morning at DeSoto that he was going to get on the engine. Tabor asked witness what was the matter with Bailey, and what was the reason he was not making time, and why he asked for a helper over Hogan Mountain, and then said: "I am going to ride that engine, and I am going to find out what is the trouble." The master mechanic is the boss of the engineer as to the machinery part of the engine. Witness further stated that it was broad-day light when his train left DeSoto for St. Louis that morning.

Charles A. Castile testified that he was section foreman in charge of the Wicks portion of the rail-

road, and was working on the defective car on the main track north of the Wicks switch; that the switch at the time of the accident was in good condition and had been opened for the purpose of allowing trains to use the passing track instead of the main track; that the switch stand could be seen from the south about one-half mile; that witness got to the wreck about ten minutes after it occurred and found several cars down in the dump. In his opinion the wreck was caused by running too fast into the open switch.

Albert Gumpert testified that he was fireman that morning on train number 18, going north, having taken the train at Poplar Bluff to run that day to St. Louis; that the engine was not steaming good and that some time was lost on the road between Poplar Bluff and DeSoto; that Tabor got on the engine at DeSoto, and took his seat on the fireman's side, that is, the left side of the cab. He did not hear any thing said between Tabor and Bailey between DeSoto and Riverside. That they passed a freight train at Riverside and Mr. Tabor looked over to see who was running the engine on that train; after that he heard Mr. Tabor remark that the engine pounded pretty hard, but that if the wedges were set up and brasses filed, it would be all right. This was said about six miles south of the Wicks switch. That as the train passed Sulphur Springs, witness remarked to Tabor that he could not fire the engine properly and Tabor said: "When we get to St. Louis I will have them [the grates] replaced." That when the engine struck the switch it was going about fifty miles an hour and witness was putting in coal, had the shovel in his hand, Tabor looked at Bailey and then at him, and at that moment witness started to jump but went over with the engine. Bailey was running the engine at the time.

Charles Montgomery testified for the plaintiff that he was a traveling engineer for the defendant and had

been in the railroad service about twenty-five years, and knew Mr. A. E. Tabor during the time he was master mechanic at DeSoto, about eight months. Mr. Tabor had full charge of the mechanical and car departments, that is, of all the machinery, consisting of locomotives and such as that, in the division to which he was assigned. His office was adjacent to the repair shops at DeSoto. The master mechanic is under the superintendent of motive power. He testified that when an engine goes on to the road, that is, when the train is made up and started out on the road, the conductor and the engineer get their directions in regard to the moving of their train from the train dispatcher. The master mechanic has no control whatever over the train dispatcher or the train dispatcher over the master mechanic. The master mechanic is supposed to see that his engines are in good shape and that they are in working order and in order to do this he rides on the engine and train to watch its work. When an engine gets out of order, it is the duty of the engineer to report it defective to the round-house foreman at the terminal. The round-house foreman is under the master mechanic. Witness had seen Mr. Tabor ride over the road on engines sometimes about three times a week to see how they were operating; when he did so he had nothing to do with the management of the train, that was controlled by the conductor. In such a case the master mechanic had no control over the engineer so far as the movement of the train was concerned. The master mechanic has the right to go on an engine to see how it is working, whether there is anything wrong with it or not, but when he is on the engine, he had no control over the running of the train, that was governed by the orders given by the train dispatcher.

E. D. Mercer also testified that he was a traveling engineer and had been in the railroad service for forty-

two years, had been connected with the master mechanic's department for thirty-six years.   He corroborated Mr. Montgomery in saying that the master mechanic has nothing whatever to do with the running of the train, that is controlled by the superintendent and train master who give their orders to the conductor.

Rules number 408, 409 and 436 of the defendant company were read in evidence.  These rules in substance place the engineer in all matters pertaining to the movement of trains or the discipline of the service, under the authority of the superintendent, and division superintendent, and he is required to obey the orders of the train master.  In all matters relating to mechanical questions, they are under the authority of the master mechanic.

At the close of the plaintiff's evidence, the defendant requested the court to sustain a demurrer to the evidence, which the court refused to do.  Thereupon the defendant called J. W. Hopkins, who testified that he was the chief dispatcher of the defendant at DeSoto, Missouri, and the territory under his jurisdiction reached from St. Louis to Piedmont, and from Bismarck to Belmont.  He testified that when a master mechanic goes on an engine to investigate it, he has authority over the engineer and if he discovers that the speed is too great he has the right to tell the engineer about it, or if he was running at an excessive rate he had the right to say to the engineer, "Reduce your speed."  That it was the custom of Mr. Tabor, the master mechanic, to ride on the engine over the road at his pleasure, and this was known to the division superintendent.  He testified further that the engineer controlled the speed of the train and that there was no speed limit to a passenger train, the engineer being the judge of the speed; that sixty miles an hour, if the track was in good condition, would not be con-

sidered an excessive rate of speed. He stated that the master mechanic's department was entirely separate from the train-master's department, and that when the work that the master mechanic had to do with the engine ended, the dispatcher's department began. That the master mechanic had nothing to do with directing the movements of a train on the road, not even if he was on the train.

Ed. Metz testified that he was car-inspector for the defendant company and learned on the morning of April 30, 1904, that there was a crippled car on the main line near Wicks, and that a slow order had been issued in consequence. He heard that order read by conductor Austin to engineer Bailey, Mr. Tabor standing beside them at the time. There was nothing to prevent Tabor hearing the order read.

Plaintiff in rebuttal read rule 332 as follows: "332. Passenger conductors should never lose sight of the fact that their duties are of the most delicate and responsible character. That they have entire charge of the trains to which they may be assigned, and of all persons employed thereon, and will be held responsible, when on the road, for the proper care and comfort of the passengers, for the collection of tickets and fares, and for the safe and prompt movement of their trains; and from the time they go on duty until the train is set off the main track at a terminal station, unless regularly relieved, they will be responsible for the protection of their trains, and for the conduct of the trainmen."

"Rule 334. They must be familiar with the duties of the enginemen, firemen, baggagemen and brakemen, enforce the rules applicable to them upon their trains, and report any insubordination, neglect of duty or misconduct."

The defendant at the close of all of the evidence requested the court to instruct the jury that the plain-

tiff was not entitled to recover, which instruction the court refused and the defendant excepted. The court thereupon instructed the jury at length.

I.  It is not contended that the two employees, to-wit, the conductor and engineer, who were charged with the safety of the passengers and the other employees on the train of defendant, were observing due and proper care when they ran the train at the rate of fifty or sixty miles an hour into the open switch at Wicks Station. Both the conductor and engineer were warned by the order of the train dispatcher at DeSoto that there was a crippled car on the main track at Wicks and that they must pass this point on a switch or passing track, and yet the whole evidence discloses that the train was moving at least fifty miles an hour when it struck the south point of the switch. The conductor testified that his order required him to go slower at this place and he had omitted any signal to the engineer to slow up but was just starting to do so when the derailment of the train occurred, and the engineer had the same order, knew the conditions ahead of him, and it was broad-day light and the open switch in plain view, for from a half to three quarters of a mile, before he reached it, and yet he did not slacken his train, but ran it at a rate of fifty to sixty miles an hour into the open switch, in consequence of which the entire train was wrecked and the master mechanic Tabor, who was in the engine cab to discover what the defects of the engine were, was killed. This appeal is bottomed upon the proposition that the master mechanic was a fellow-servant with the conductor and engineer whose negligence caused his death, and if so that the Act of 1897 gives no right of recovery to his widow.

It was abundantly shown that it was the right and duty of the master mechanic to ride on the engine

to observe its mechanical working, and on this occasion he had been advised the engine was not working right before it reached DeSoto from the south, and he expressed his intention of going on this particular engine to discover what was the matter, and in so doing he was strictly within the line of his duty as master mechanic in riding thereon from DeSoto to St. Louis. The fireman told him that he could not fire the engine properly because it had a bad set of grates, and Mr. Tabor replied he would have them replaced when they reached St. Louis, and also said, "If her wedges were set up, and her brasses filed, he thought she would be all right." It was also established by the printed rules of the defendant, as well as the oral evidence of the conductor and the other engineers, that while the master mechanic Tabor was the superior of the engineer as to any mechanical defect or change or treatment of the engine, he had absolutely no authority over the engineer as to the movement of his train, but that when a train is started on the road, the engineer and conductor are subject to the orders of the train-master alone, and not to the master mechanic, even though he is on the engine with him. While the insistence here is that the deceased master mechanic was a fellow-servant of the engineer, the testimony offered by defendant tended to prove that he was the superior of the engineer, and that the latter was subject to his orders even as to the movement of the train, and the evidence for the plaintiff was to the effect that as to the movement of the train the master mechanic had no authority whatever, and was the superior of the engineer only in the sense that the engineer would be bound by the master mechanic's judgment as to any defect in the machinery of the engine and what should be done to remove the same, and he was on the engine solely to observe its working and to discover, if he could, why it did not make steam properly and why the engineer

could not make time.  They were not in any sense, from either point of view, fellow-servants of the same grade engaged in a common service, the engineer being according to defendant's contention an inferior in all respects, and according to plaintiff's the master mechanic was a superior servant as to the mechanism of the engine, and its need of repairs if any, and as to the movement of the train with no function whatever to perform and no authority to exercise over the engineer.

If this were a case in which the engineer had been injured or lost his life by reason of the defendant's negligence in not furnishing him a reasonably safe engine to run, and it had appeared, as it does here, that the defendant had employed the master mechanic to see that the engine was a reasonably safe one when sent out on the road, no doubt can exist under the decisions of this court that the master mechanic would be held to be the vice-principal of the defendant, and not a fellow-servant.  Judge Thompson, in his Commentaries on the Law of Negligence, vol. 4, sec. 4976, says: "Is the master machinist of a railway company a fellow-servant with a fireman or brakeman?  The better opinion is, that he is not.  If this is not so, the rule which charges the master with responsibility to the servant for defective machinery, falls wholly to the ground in the case of corporations; for, since a corporation can act only through its agents, if the agent or servant who has charge of the construction and repairs of its machinery is a fellow-servant with him who is employed in running it, it follows that corporations will be exempt, in all cases, from the obligation of furnishing their servants with safe machinery which attaches to other proprietors.  Such a servant, then, is fairly deemed a vice-principal of the master, and his negligence is the master's negligence to all intents and purposes, the same as though the master was present,

performing his duties in person. Another way of stating what seems to be the correct rule is, that the mechanics having charge of the construction and repairs of the master's machinery are not fellow-servants engaged in the same common employment with the servants who are engaged in operating it." [Tabler v. Railroad, 93 Mo. 79; Moore v. Railroad, 85 Mo. l. c. 596, 597; Lewis v. Railroad, 59 Mo. l. c. 506; Brothers v. Cartter, 52 Mo. 372; Ford v. Railroad, 110 Mass. 240; Cooper v. Railroad, 24 W. Va. 37; Shanny v. Androscoggin Mills, 66 Maine 420; Railroad v. State, to use, 45 Md. 229; Mullan v. Steamship Co., 78 Pa. St. 25; Railroad v. Dunham, 49 Tex. 181; Brabbits v. Railroad, 38 Wis. 298 and 299.]

But in this case the disaster to the train in no manner resulted from any defect in the engine or any want of care on the part of the master mechanic, but was attributable altogether to the negligence of the conductor and engineer in failing to slow down as they approached the open switch. On this point the conductor testified as follows: "Q. It was your duty to signal the engineer? Ans. Yes, sir, I had started to walk to the end of the car. Q. You were bearing in mind your orders? Ans. Yes, sir. Q. You had started to signal when the crash came? Ans. Yes, sir." Rule 332 promulgated by defendant for the government of its employees reads: "Passenger conductors should never lose sight of the fact that their duties are of the most delicate and responsible character. That they have entire charge of the trains to which they may be assigned and of all persons employed thereon and will be held responsible, when on the road, for the proper care and comfort of the passengers, for the collection of tickets and fares, and for the safe and prompt movement of their trains; and from the time they go on duty until the train is set off the main track at a terminal station, unless regularly relieved, they will be held re-

sponsible for the protection of their trains, and for the conduct of the trainmen." Judge Thompson, in his Commentaries on the Law of Negligence, vol. 4, sec. 5030, states the relation of the conductor to the master and the other trainmen in these words: "The conductor of a railway train is the master of the train, in the same sense in which the captain of a ship at sea is master of the ship. With respect to those measures which are necessary for the safety of the persons on board the train, he wields the whole power of the railway company, except in so far as those powers have been specially committed to the engineer or to other servants. The better view, therefore, ascribes to him the status and authority of a vice-principal of the railway company, so as to render it liable for his negligence resulting in injury to its subordinate servants upon the same train." Section 2874, Revised Statutes 1899, in full force and effect when this action accrued, provides: "That all persons engaged in the service of any such railroad corporation doing business in this State, who are entrusted by any such corporation with the authority of superintendence, control or command of other persons in the employ or service of such corporation, or with the authority to direct any other servant in the performance of any duty of such servant, or with the duty of inspection or other duty owing by the master to the servant, are vice-principals of such corporation, and are not fellow servants with such employees." When rule 332 of the defendant is read in the light of this section, it seem too clear for cavil or dispute that the conductor of train 18 was not a fellow-servant with the master mechanic but had been entrusted by the defendant with the control and entire charge of the train and of all persons employed thereon, and *pro hac vice* he was vice-principal over the master mechanic as well as all the trainmen. The evidence clearly discloses that the master mechan-

ic had nothing to do with the movement of. the train and no right to interfere with the engineer as to its speed. Moreover, his duties did not bring him in contact with the engineer or conductor except casually when observing the mechanical working of the engine. Their duties were wholly dissimilar. The master mechanic was employed and engaged in the construction and repair department of the defendant company, whereas the conductor and engineer were engaged in the operating department, the moving of the trains under the direction and control of the train-dispatcher to whom they were required to look for their orders, and for their negligence in the running, conducting and managing said train the defendant was and is responsible to the widow of the deceased master mechanic Tabor under section 2864, Revised Statutes 1899.

We are aware that the decision of the Supreme Court of the United States in Railroad v. Ross, 112 U. S. 377, was modified by the subsequent ruling in Railroad v. Baugh, 149 U. S. 368, in which it was held that an engineer and fireman were fellow-servants when in charge of an engine running alone, although a rule of the company provided that, "Whenever a train or engine is run without a conductor, the engineman thereof will be regarded as conductor and will act accordingly." But Mr. Justice BREWER, after stating the real ground upon which the Ross case stood, said: "So, oftentimes there is in the affairs of such corporation what may be called a manufacturing or repair department, and another strictly operating department; these two departments are, in their relations to each other, as distinct and separate as though the work of each was carried on by a separate corporation." That language is appropriate to the conditions before us. Here the whole testimony fairly construed demonstrates that

Mr. Tabor, as master mechanic, was the chief of the repair department of defendant at DeSoto, with no connection with the operating department save to provide it proper engines and cars for the movement of its trains, and on the other hand, the train dispatcher was the head of the department for the movement of trains and the conductors and engineers were subject to his orders only, and he stood as vice-principal to them. So that while the Baugh case does restrict the general language of the Ross case, it recognizes that the members of absolutely distinct branches of the service can not with reason or justice be said to be fellow-servants in a common employment. In Railroad v. Herbert, 116 U. S. 653, Mr. Justice Field, speaking of the distinction between the providing of safe machinery, and the business of handling and moving it, said: "The two kinds of business are as distinct as the making and repairing of a carriage is from the running of it." In Ford v. Railroad, 110 Mass. 240, it was said: "The agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule relied on, to be regarded as fellow-servants of those who are engaged in operating it. They are charged with a master's duty to his servant. They are employed in distinct and separate departments of service and there is no difficulty in distinguishing them, even when the same person renders service by turns in each as the convenience of the employer may require."

Accordingly, in our opinion the circuit court committed no error in overruling the demurrer to the evidence, either at the close of the plaintiff's case or at the end of all the testimony, and in refusing to hold that the deceased, Tabor, was a fellow-servant with the conductor or engineer, and it follows that the contention that the widow's right to sue depended upon the

Act of 1897, giving a right of action to a fellow-servant only and not to his widow, is not in the case.

The judgment of the circuit court is affirmed. All concur.