## ALLEGA WILLIAMS v. EDWARD B. PRYOR et al., Appellants.

### In Banc, December 22, 1917.

1. **NEGLIGENCE: Federal Employers' Liability Act: Issues Upon Demurrer.** Since contributory negligence is not under the Federal law a bar to a recovery by an employee injured in the course of his employment while engaged in interstate commerce, a demurrer to the evidence can be sustained only on one of two theories, namely, (1) that there was no negligence on the part of defendant, or (2) that the plaintiff assumed the risk, and one or the other of these must appear as a matter of law.

2. **ASSUMPTION OF RISK: When Possible.** There can be no assumption of risk except in cases in which the relation of master and servant exists. But that relation may be by either an express or an implied contract.

3. ————: **What Risks: Duty of Master.** A servant employed to do a given work assumes the ordinary and usual risks incident to such employment. But, that admitted, it still is the duty of the employer to furnish the employee a reasonably safe place in which to perform his work, and reasonably safe tools with which to perform it. Those duties are non-delegable in the sense that the master is always responsible for the faithful performance of them.

4. ————: **Defective Tool: Question for Jury.** If the tool furnished by the master was not, according to plaintiff's evidence, reasonably safe for the performance of the work assigned by the master to the servant, the question of the master's negligence is one for the jury.

5. ————: ————: **Negligence.** The furnishing of a tool which is not reasonably safe for the performance by the servant of the work assigned to him by the master, is negligence on the part of the master, and the servant does not assume a risk growing out of the master's negligence.

6. ————: **Patently Defective Tool: Continuing to Use.** If the tool furnished by the master is so patently defective that an ordinarily careful and prudent man would not use it, a use of it by the servant is negligence, but under the Federal law that negligence, being contributory, does not bar a recovery, nor does the servant assume the risk growing out of the master's negligence in furnishing such a tool.

7. ———: **Common-Law Rule: Use of Glaringly Defective Tool: Con-tributory Negligence.** In cases in which the doctrine of assumed risk can be invoked such assumed risk must be determined by the common-law rule as -that rule has been announced by the Missouri courts, and it is (1) that the servant never assumes a risk that is the outgrowth of the master's negligent act, and (2) that the servant cannot recover on the ground of his own negligence, which in Missouri is denominated contributory negligence, and the use of a glaringly defective tool would be such, but under the Federal statute such contributory negligence does not bar recovery, nor does the servant because of such contributory negligence assume the risk occasioned by the master's negligence.

8. ———: **Simple-Tool Doctrine.** It is negligence of the master to furnish a tool which is not reasonably safe for use by the servant in the performance of his work, whatever be the character of the tool. In its final analysis the so-called simple-tool doctrine is nothing more than that of contributory negligence, which is no defense under the Federal statute and does not fasten assumption of risk on the servant.

9. ———: **More Dangerous of Two Methods.** The choosing by the servant of the more dangerous of two methods of performing the work assigned to him, is contributory negligence on his part, and does not defeat his right to recover for injuries which result from the master's negligence in failing to furnish him a reasonably safe tool for the performance of his work.

Appeal from Chariton Circuit Court.—*Hon. Fred Lamb*, Judge.

AFFIRMED.

*J. L. Minnis, N. S. Brown* and *J. A. Collet* for appellants.

The court erred in overruling defendant's demurrer to the evidence, this because: First: The evidence wholly failed to show that the particular tool with which plaintiff was working was furnished by defendants, but showed on the contrary, that the tool was of plaintiff's° own selection. Second: Because the evidence showed that the tool in question was so manifestly of the simple tool variety or class, that the master could not be presumed to have any superior knowledge or judgment in relation to the tool than the servant using it, and was therefore under no obligation to make an inspection of

the tool before permitting its use. Third: Because the evidence clearly disclosed that whatever defects, if any, the clawbar in question had, they were plainly discernible to plaintiff upon the slightest inspection, and having selected this tool knowing its condition, or under such circumstances as would make him chargeable with knowledge of its condition, he assumed all the risk incident to its use. Fourth: Plaintiff's own evidence disclosed that the clawbar used by him was entirely safe for the use required of it, if used in the ordinary and safe manner, and that in using it in the manner in which he did use it, he not only recognized that that was not the safest manner, but he also recognized that under the circumstances he was in danger of experiencing the very accident and injury that befell him, and having voluntarily chosen the unsafe manner of performing the labor, he assumed all the risk incident thereto, and cannot recover. 8 Thompson on Negligence, sec. 4608; 20 Am. & Eng. Ency. Law, pp. 80 and 112; Labatt on Master and Servant, sec. 154; Randell v. Railroad, 109 U. S. 478; Kohn v. McNulta, 147 U. S. 238; Arman v. Hahn, 111 U. S. 313; Railroad v. Archibald, 170 U. S. 665; Railroad v. Horton, 233 U. S. 492; Jacobs v. Railway, 241 U. S. 229; Oil Co. v. Brown, 54 L. Ed. 939; Dickenson v. Jenkins, 144 Mo. App. 132; Courter v. Mercantile Co., 136 Mo. App. 517; Beckman v. Brew. Assn., 98 Mo. App. 555; Post v. Railway, 121 Mo. App. 562; Trainer v. Mining Co., 243 Mo. 359; Fugler v. Bothe, 117 Mo. 475; Knorpp v. Wagner, 195 Mo. 637; Holloran v. Iron & Foundry Co., 133 Mo. 470; Mathis v. Stock Yards Co., 185 Mo. 434; Steinhauser v. Spraul, 127 Mo. 541; Harris v. Railroad, 146 Mo. App. 524; Roberts v. Telephone Co., 166 Mo. 370; Lowe v. Railroad, 265 Mo. 587; Wachsmith v. Electric Train Co., 118 Mich. 275.

*H. J. West* and *Roy W. Rucker* for respondent.

(1) The trial court committed no error in modifying defendant's instruction No. 3. The second paragraph of said instruction was based on the theory that

if the jury found that the plaintiff was using the claw-bar in a manner which was less safe than some other method then plaintiff could not recover because he assumed the risk of injury which might befall him. That instruction defined contributory negligence and not assumption of risk. Montgomery v. Railroad, 109 Mo. App. 94; Hurst v. Railroad, 163 Mo. 322; Moore v. Railroad, 146 Mo. 582; Harris v. Railroad, 250 Mo. 567; Fish v. Railroad, 263 Mo. 124; Rhea v. Railroad, 171 Mo. App. 179. (2) The mere fact that the servant chooses a dangerous way in which to do a particular thing when it might be done with less hazard in another way does not preclude recovery. Daniels v. Goeke, 191 Mo. App. 11-12; Rhea v. Railroad, 171 Mo. App. 178; Hutchinson v. Safety Gate Co., 247 Mo. 116. (3) Appellant had not properly stated the doctrine of assumption of risk as the same is defined by the courts of this State. Fish v. Railroad, 263 Mo. 122; Cross v. Railroad, 191 Mo. App. 202. (4) Appellant's demurrer to the evidence was properly overruled. Blankenship v. Paint & Glass Co., 154 Mo. App. 489.

GRAVES, C. J.—This case reaches this court by a proper certification of the Kansas City Court of Appeals, it being recited in the certificate of that court that one of the judges of that court deemed their opinion to be in conflict with the law as announced by this court in the case of Fish v. Railway Co., 263 Mo. 106. Judge JOHNSON of the Court of Appeals fairly outlines the case in this language:

"This is an action for damages for personal injuries plaintiff alleges he sustained in consequence of negligence of defendants, his employers who, at the time, were receivers of the Wabash Railroad Company.

"Plaintiff, a laborer, was employed in the work of tearing down a bridge on the road near Ottumwa, Iowa, and was attempting to draw a bolt from a bridge cap with a clawbar when the claws slipped from their hold on the bolt, causing plaintiff, who was bearing down on the free end, to lose his balance and fall to the ground,

a distance of twelve feet. The petition alleges 'that said clawbar was caused to slip on said bolt and the plaintiff was caused to be hurt and injured by reason of the claws on said bar having become battered and worn to such an extent that they would not take a firm hold on the bolt that was being drawn, and that because of such battered and worn condition of said claws the said clawbar was rendered dangerous and not reasonably safe for the work in which plaintiff was engaged . . . and plaintiff, without any fault or negligence whatever on his part, was unaware of the battered and worn condition of said clawbar, and did not know that the same was unsafe for use in drawing said bolt,' and the specific negligence averred is that defendants 'negligently and carelessly failed and neglected to furnish plaintiff a reasonably safe clawbar with which to work, and negligently furnished him a clawbar with which to draw said bolt that was old and battered and worn as aforesaid and unfit for the purpose for which it was provided and not reasonably safe for the work in which the plaintiff was engaged at the time he was injured,' etc.

"The defenses interposed by the answer are a general denial and pleas of assumed risk and contributory negligence. The jury returned a verdict for plaintiff for $5,000, and after their motions for a new trial and in arrest were overruled, defendants appealed.

"The pertinent facts disclosed by the evidence of plaintiff may be stated as follows:

"Plaintiff, who was twenty-one years old and had been reared on a farm, entered the service of defendants as a common laborer in August, 1915, and worked for them until his injury in November of that year, his work being that of 'helping build steel bridges and taking down old ones.' Shortly before his injury the foreman in charge of the work of tearing down an old bridge, ordered plaintiff to draw a certain drift bolt which was about fifteen inches long and three-fourths of an inch in diameter, from the bridge cap, a timber sixteen feet long and twelve by twelve inches in its other dimensions. First, plaintiff cut out the wood from around the bolt

with an axe, then he struck the bolt sidewise with a maul to loosen it, and then he took up the clawbar, which was one of the tools provided by defendants and, so far as the evidence discloses, the only clawbar at hand, and proceeded to draw the bolt out of the cap. The claws projected forward from the heel of the clawbar which rested on the cap and served as the fulcrum. On the first application of the power exerted by plaintiff, who stood on the cap and pressed downward on the free end of the bar, the claws pressed upward on the head of the bolt and pulled the bolt out of the wood to the limit of the action of the claws. Then plaintiff raised the free end of the lever, inching the claws down the shank of the bolt and then by twisting or turning the bar in his hands, endeavored to grasp the shank tightly between the claws, so that the next application of power would be exerted at the place where the bolt was being held in that grip. The men called this inching process 'Arkansawing the bolt,' and the evidence of plaintiff tends to show that such was the customary, as well as the most expeditious, method of pulling bolts, while the evidence of defendants is to the effect that the customary and safer method was to block up under the heel after each pulling of the bolt, so that the claws at each application of the power would press directly against the bolt head and be held thereby from slipping. Plaintiff states that in 'Arkansawing the bolt' he endeavored by turning the bar to obtain a firm hold on the shank, but that the claws had become so rounded and dulled by long usage that they could not be made to grip the shank securely, and slipped from their hold when plaintiff pressed downward on the handle, causing him to lose his balance and fall from the cap to the ground.

"Further plaintiff states that to discover the defect required the inspection of the underside of the tool, and that in obeying the order of the foreman to draw the bolt he did not pause to make such inspection, but proceeded to use the tool without any but a casual inspection of its top surface, which did not reveal the presence

of the defect. The railroad on which plaintiff was work-
ing was engaged in interstate commerce, and the case
was properly tried by both parties on the theory that
the cause of action, if any, inured to plaintiff, fell with-
in the purview of the Federal Employers' Liability
Act."

The Court of Appeals held that the plaintiff assumed
the risk of using a simple tool, where the condition
thereof was open and obvious. If further details of the
evidence become necessary they can best be given in
the course of the opinion.

I. The assignment of errors in this court are: (1)
refusal of a demurrer to the testimony at the close of
plaintiff's case, (2) refusal of such demurrer at the close
of the whole case, (3) refusal to give instruction num-
bered 3 as asked by defendant and in modifying same
and giving it as modified, (4) refusal to give Instruc-
tion Number 7 for defendant, and (5) refusal to give In-
struction Number 12 for defendant.

An examination of these assignments of error in
the light of the pleadings, proof and instructions, demon-
strates that the real questions are (1) was the negli-
gence of defendant shown by the proof,
**Issues for Determination.** and (2) did the plaintiff assume the risk,
when he did the act in the manner in
which he did it, and with the tool used? Under the Fed-
eral law, contributory negligence is not a bar to recov-
ery, but may be considered by the jury in determining
the damages. So, that if defendants are right in urging
their demurrer to the testimony, it must be upon one
or the other grounds mentioned above, i. e. no negligence
on the part of the defendants, or plaintiff assumed the
risk, and that one or the other of these appears as a
matter of law.

II. The subjects of assumption of risk, and contrib-
utory negligence, are often confusedly discussed in the
cases. In Fish v. Railway, 263 Mo. 106, this
**Assumption of Risk.** court clarified the atmosphere to the extent
of holding that there could be no assumption

of risk, except in cases where the relation of master and servant existed, which relation might be by either an express or an implied contract. The instant case is one which falls within the class of cases in which the doctrine of assumed risk may be invoked. The real question in the case is, whether or not the things charged to the plaintiff herein, by the pleadings and proof, are things properly classed under the subject of assumed risks, or are they mere matters of contributory negligence?

We start with the rule, that where one employs another to do a given work (thus creating the relationship of master and servant) the latter (the servant) assumes the ordinary and usual risks incident to such employment. We then advance to another simple and well defined rule, that it is the duty of the employer to furnish to the employee a reasonably safe place within which to perform the work, and reasonably safe tools with which to perform it. These duties are what we denominate non-delegable duties. They rest upon the master, and if he leaves those duties to be performed by another, he is responsible for the performance. In other words, the master can never shift liability by saying that he had a competent person do these things for him. They are non-delegable duties in the sense that the master is always responsible for the faithful performance of them.

In the instant case the master furnished to the plaintiff a clawbar which, according to the evidence of the plaintiff, was not reasonably safe for the performance of the work assigned by the master to the servant. At least the jury could have found from the evidence that the tool as furnished was not reasonably safe for the performance of the work. The question then of the master's negligence was one for the jury, and the jury has found that the master was negligent. The simple-tool doctrine urged by the defendant we discuss later. What we now want to make clear is the fact that there is evidence in this record from which a jury might well find that the master was negligent in furnishing the clawbar used by the plaintiff, unless the

simple-tool doctrine changes the situation, and this doctrine cannot change the situation, except upon two theories, i. e. (1) that there is no negligence upon the master in furnishing to the servant a simple tool, which is defective, and (2) that by the use of such defective simple tool, the servant assumed the risk. But as stated we will discuss simple tools later. What we now desire to discuss is the situation of the law, on the theory, that the furnishing of the defective clawbar was negligence upon the part of the defendant, as the jury has found.

It is the unbroken rule in Missouri, that the servant never assumes the risk, where such risk grows out of the negligence of the master. [Fish v. Railway, 263 Mo. 1. c. 125. Charlton v. Railroad, 200 Mo. 1. c. 433; Patrum v. Railroad, 259 Mo. 1. c. 124; George v. Railroad, 225 Mo. 1. c. 407.] These cases and the causes cited therein thoroughly state the rule and reasons therefor. Thus in the Charlton case, it is said: "Assumption of risks rests on contract—negligence rests in tort. [Dale v. Hill-O'Meara Construction Co., 108 Mo. App. 1. c. 97.] The servant, when he enters his master's employ, impliedly agrees with him, for the compensation named, to assume the risk of usual dangers incident to the work. But the servant does not assume the risk of the master's negligence, for a very good reason, and that is because it is a fundamental proposition that it is against public policy for a master to contract against his own negligence. So, too, in the assumption of risks by a servant it is well to consider a certain assumption by the master, and that is, that the master impliedly contracts with the servant that he will exercise ordinary care to protect such servant from injury by providing a reasonably safe place for him to work. When these two assumptions are considered as proceeding hand in hand, it will be perceived that the risks assumed by the servant are those risks alone which remain after the master has exercised ordinary care."

To like effect FARIS, J., in Patrum v. Railroad, supra, said: "The moment negligence comes in at the door it may well be said that the doctrine of assumption of risk goes out at the window. [Curtis v. McNair, 173

Mo. 270; Brady v. Railroad, 206 Mo. 509; Tinkle v. Railroad, 212 Mo. 445; Huston v. Railroad, 129 Mo. App. 576.] We have here in Missouri, whether logically or illogically we need not here pause to discuss, come to use the term 'assumption of risk' to express the mere hazards which appertain to a dangerous avocation when unaffected by the negligence of the master. When, however, the servant enters into or remains in the service of the master with actual or constructive knowledge of defects arising from the master's negligence and without a promise of remedy, we speak of this in our Missouri courts as contributory negligence.''

Now in the instant case, if the furnishing of the worn and battered clawbar, was negligence upon the part of the master, then under the Missouri rule, so long and so firmly fixed, there is no assumption of risk in the use of such tool. If the tool was so patently defective that an ordinarily careful and prudent man would not have used it, then we have the plaintiff doing what an ordinarily careful and prudent man would not have done, having in view his own self-protection, and such use would be negligence upon his part, which negligence contributed to his injury. In other words, we would have negligence upon the part of defendant, and contributory negligence upon the part of the plaintiff. But under the Federal law, this contributory negligence does not bar a recovery, but may be only shown to reduce the damages. If therefore, the furnishing of this clawbar, in its defective condition, was negligence upon the part of the master, there is no assumption of risk in the case, and the most there is for the defendant is the alleged contributory negligence, and the demurrers to the evidence could not be sustained on that ground, under the Federal law.

III. In Fish v. Railway, 263 Mo. 106, we properly held that under the Federal statutes there were two classes of cases: (1) a class of cases wherein the assumption of risk could not be invoked, and (2) a class of cases wherein the defendant could invoke the doctrine of assumed risk. With this ruling we are

*Contributory Negligence: Missouri Rule.*

fully satisfied, and the case now before us is within the latter class, above named. But in the Fish case, supra, we further held that as to the class of cases wherein the doctrine of assumed risk could be invoked, such assumed risk must be determined by the common law rule, and to this doctrine we now adhere. Not only so, but we say now, in plain terms, what was inferentially said in the Fish case, and that is, by the common law rule, we mean the rule of the common law, as it had been announced by the Missouri courts. That rule is that the servant never assumes a risk where such risk is the out-growth of the master's negligent act. In Missouri, the use of a glaringly defective tool may show negligence upon the part of the party so using it, but such party does not assume the risk which was created by the negligent act of the master in furnishing such tool. In such cases we hold that the plaintiff cannot recover on the ground of his own negligence, i. e. his doing a thing which an ordinarily careful and prudent man would not have done, having in view his own safety. In the Fish case, supra, we denominated this contributory negligence, and we still adhere to that rule. The Fish case is not the only Missouri case so to announce, but on the contrary many cases so hold. If assumption of risk grows out of the contractual relation of master and servant, as our cases hold, then there is no other place to which to give such acts of the servant, than to the field of contributory negligence. The risks he assumes are those he contracted to assume, i. e., those necessarily incident to the work. Not risks which grow out of negligence, whether such negligence comes from the one contracting party or from the other. If the neglect is that of the master, we simply denominate it negligence. If the neglect is that of the servant, and he is suing for the neglect of the master, we denominate it contributory negligence. To illustrate by the case at bar. It was the duty of the master to furnish the servant a reasonably safe clawbar with which to do the work. The failure to furnish that character of a clawbar was negligence upon the part of the master. If the defects were so glaring, and the clawbar so patently defective that an ordinarily

prudent servant would not have used it, then its use under such circumstances was negligence upon the part of the servant, which negligence under the rule in Missouri would bar him from a recovery. But not so under the Federal statute.

IV. So that we reach this point, in this case: if we were right in the Fish case, the Court of Appeals is wrong in the opinion certified with the case

**Adherence to Missouri Rule.** to this court. We are not shaken from our views in the Fish case. Under the ruling of that case, there is no assumption of risk in the case at bar, if there was negligence upon the part of the master in furnishing the kind of clawbar that was furnished. The evidence was such as to authorize the submission of the question of the master's negligence to the jury, and the jury has found the master negligent. The matter of plaintiff's contributory negligence was submitted to the jury by proper instruction under the Federal act, which permitted the jury to consider the same in reducing damages.

Whatever the rule as to assumption of risk may be in other jurisdictions, we are satisfied with the Missouri rule. We are as yet not convinced that we were wrong in the Fish case when we said that in the class of cases under the Federal statute, wherein assumption of risk could be invoked as a defense, such assumption of risk was that of the common law as interpreted by this court, in cases tried in our court. As this court interprets the common law, there can be no assumption of a risk occasioned by the negligence of the master. We find no Federal case discussing the right of this court to apply its common law rule in determining whether or not the defense of assumed risk is in a case. Until the higher court says we cannot apply the common law rule as we understand it to be, and for years have understood it to be, we shall adhere to the rule as announced in the Fish and previous cases, i. e. that the servant never assumes a risk which is the outgrowth of the master's negligence, and further that if such servant remain in a glaringly unsafe place, or use a glaringly

defective tool, negligently furnished by the master, such servant is guilty of contributory negligence, but has not assumed the risk occasioned by the negligence of the master.

V. We now come to the simple-tool doctrine urged by the defendants. As indicated above, this so-called doctrine cannot avail the defendants, except upon one of two theories, i. e. (1) that it is not negligence upon the part of the master to furnish a tool which is not reasonably safe for the perform-

**Simple Tool Doctrine.**

ance of the work, if such is of simple mechanism and not a complicated one, and (2) that the servant assumed the risk of using such tool.

What we have previously said practically disposes of this question. It is negligence for a master to furnish a tool which is not reasonably safe to be used on the work, and we care not what the character of the tool, in so far as the negligence of the master is concerned. Because the contract of hiring called for a reasonably safe place wherein to work, and reasonably safe tools with which to work. When we say the contract of hiring, we mean such a contract of hiring as we have before us in the present case. If the master says to the servant, I have a certain work to do, and here are the tools you must use, and the servant accepts the employment, we might have a different case, but that is not this case, nor do we say we would have a different case, because the contracting against his own negligence might be a factor. However, we had better adhere to the case here.

Going back to the so called simple-tool doctrine, what is there to be found in it? In its last analysis it is nothing more than that of contributory negligence. A servant picks up a hoe, an axe, or a clawbar, and if the defects are open and glaring, and so open and glaring that a reasonably prudent person would not undertake to use them in the work being done, then the use of the tool would not be the exercise of ordinary care upon his part for his own protection. This failure to use ordinary

272 Mo.—40

care is negligence, and if he sues the master for the master's neglect in furnishing an unsafe tool, the master may respond and say the tool was a simple device, and any ordinary person could have seen and known the defects thereof, and in using it in that condition you have been guilty of negligence which contributed to your injury, and you cannot recover. To my mind that is all there is in the so-called simple-tool doctrine in states like Missouri, where we have fixed views upon assumed risk. You can show the simple character of the tool, and the obviousness of the defects, to show contributory negligence.

VI. What we have said practically disposes of another contention made, i. e., that the servant having chosen the more dangerous of two methods of doing work, assumed the risk incident to the method chosen.

Choosing Dangerous Method. Here again the courts of this State denominate this act contributory negligence and not assumption of risk. [Montgomery v. Railroad, 109 Mo. App. l. c. 94; Moore v. Railway, 146 Mo. l. c. 582.]

In the Moore case, supra, WILLIAMS, J., quotes with approval the following from Bailey on Personal Injuries Relating to Master and Servant, volume 1, section 1123: "Where a person having a choice of two ways, one of which is perfectly safe and the other of which is subject to risks and dangers, voluntarily chooses the latter and is injured, he is guilty of contributory negligence and cannot recover."

And this is sound, in my judgment. If a servant choose the more dangerous of two ways open to him, he is failing to do (for his own protection) that which an ordinarily careful and prudent person would do. Such failure is negligence on his part, and where such negligence is invoked as a defense by the defendant in a law suit, the law denominates it contributory negligence.

VII. As indicated, the rule announced in the Court of Appeals contravenes the rule in the Fish and other

## VOL. 272, OCTOBER TERM, 1917. 627

State ex rel. Tel. Co. v. Public Service Comm.

cases from this court. It held that the plain-
**Conclusion.** tiff was barred because he had assumed the
risk. To this we do not agree. Whilst the
defendant has made five assignments of error, set forth
above, they all raise the questions which we have dis-
cussed, and raise none other. In our judgment this case
was well tried by the court *nisi,* and its judgment
should be affirmed. It is so ordered. All concur.