## W. D. BECK, Respondent, GALLOWAY PEAS LUMBER COMPANY, a Corporation, Appellant.

Springfield Court of Appeals, March 11, 1922.

1. **MASTER AND SERVANT: Employee Using Tool not Fellow-Servant of Employee Sharpening it.** Where plaintiff, injured while hooking tongs on logs, was working as an extra and was not charged with the duty of observing that the tong hook needed sharpening and seeing that it was sharpened, if such duty rested on the regular tong hooker, then he and plaintiff were not fellow servants with respect to the sharpening of the hook.

2. ———: **Injury from Concurring Negligence of Employer and Fellow-Servant Actionable.** Where one hooking tongs on logs and injured when the tong hook slipped and struck him, had stepped away from the logs to a point near a car of logs, but was compelled to move because some one loosened the chain holding those logs, if the person loosening the chain was his fellow-servant, there was merely a concurring of his negligence with the master's negligent failure to furnish a safe tong hook, and the master was liable.

3. ———: **Duty to Furnish Safe Place and Tools Cannot be Delegated.** The master's duty to use ordinary care to furnish a reasonably safe place to work and reasonably safe tools rests directly on the master and cannot be delegated so as to escape liability for negligence, and, though he may designate any person to perform such duty, the action or want of action of the person so designated is chargeable to the master.

4. ———: **Simple Tool Doctrine Stated.** Though a tool furnished an employee is a simple one and its use and probable resultant danger therefrom are well understood by the servant, this does not absolve the master from the duty to furnish reasonably safe tools, and the employee does not assume the risk of the master's negligence and is not guilty of contributory negligence, as a matter of law, unless the danger in using the tool is so glaring that a man or ordinary prudence would not use it.

5. ———: **Contributory Negligence in Using Dull Tong Hook, Held for Jury.** The danger to an employee, engaged in hooking tongs on logs, from the dullness of the tong hook permitting it to slip, *held* not so clear as to require him to refuse to work with it, so as to charge him with contributory negligence as a matter of law, where he did work with it safely for an hour and a half, especially as he would not have been where he was struck by the hook, except for the necessity of escaping from the danger of logs rolling off another car.

6. ———: **Contributory Negligence in not Replacing Dull Tong Hook, Held for Jury.** An employee engaged in hooking tongs on logs was not negligent as a matter of law in not removing a dull tong hook, which slipped and injured him, and putting another in its place, where his testimony was that this was not part of his duty, and that his only choice was to work with it as he found it or refuse to work.

7. **TRIAL: Instruction Held not to Assume That Tong Hook Slipping and Injuring Plaintiff was Dull.** An instruction that, if the jury find that tongs were caused to slip from a log on account of the

Beck v. Galloway Peas Lbr. Co.

point being dull, if they found such to be the fact from the evidence and that such dull condition was likely to cause it to slip and thus endanger employees, etc., *held* not to assume that the tong hook was dull.

8. ————: **Instruction Held not to Assume that Circumstances Showed Negligence.** An instruction which, after defining ordinary care, defined negligence as the absence of ordinary care "under the circumstances shown in evidence" did not as claimed tell the jury that the circumstances showed negligence, especially where another instruction required a finding of defendant's failure to exercise ordinary care before plaintiff could recover.

9. **DAMAGES: Instruction on Measure of Damages not Erroneous.** An instruction that, in estimating the damages for personal injuries, the jury should consider the physical injury inflicted, if any, and the bodily pain and mental anguish endured, if any, and in assessing the damages they should assess them at such sum as they believe from the evidence would reasonably compensate plaintiff for the injury together with the suffering caused, was not erroneous.

10. **TRIAL: Remark of Counsel Held Improper, but Cured by Withdrawal and Action of Court.** The statement of plaintiff's counsel in his closing argument that the suit was for $2,999 to prevent removal to the federal court, though highly improper, was cured by counsel's withdrawal of the remark and the court's instructions to the jury to disregard it and his direction to counsel to stay within the record.

11. **DAMAGES: $2,000 for Broken Arm and Consequent Suffering and Loss of Time, not Excessive.** A verdict of $2,000 for a broken arm *held* not excessive, though there was evidence that it healed perfectly, where plaintiff had suffered and still suffered pain, and was unable to work for several months, and then earned less than at the time of the injury.

12. **APPEAL AND ERROR: Damages for Suffering not Interfered with, Unless Apparently Unreasonable or Induced in Improper Way.** Compensation for physical or mental suffering must necessarily be left to the discretion of the jury, and the amount fixed by them will not ordinarily be interfered with unless so great as to appear unreasonable, or there is some circumstance that indicates that the jury may have been induced in some improper way to increase the amount above what would appear reasonable.

Appeal from Butler County Circuit Court.—*Hon. Almon Ing,* Judge.

AFFIRMED.

*George Barnett* for appellant.

(1)   The court erred in refusing to instruct the jury at the close of plaintiff's evidence and at the close of all the evidence in the case to find for defendant. Plaintiff's own evidence shows that the hook or tong being used was a simple device, thoroughly understood by plaintiff, could be easily removed the wire cable and taken to the mechanic to be sharpened; that plaintiff knew that said tong or hook was very dull and blunt, and was likely to slip from the log; that plaintiff, nevertheless, continued to use said hook or tong and was therefore guilty of contributory negligence, as a matter of law.   Humphrey v. Lusk, 196 Mo. App. 442; Rogers v. Packing Co., 185 Mo. App. 99; Bathe v. Morehouse Stave and Mfg. Co., 199 Mo. App. 127; Williams v. Pryor et al., 272 Mo. 613, 1. c. 625; Gwinn v. McComas Hydro Power Co., 195 S. W. 504; Harris v. Kansas City Southern Ry. Co., 250 Mo. 567; Reynolds v. City Ice and Storage Co., 184 S. W. 934; Miller v. Mo. Pac. Ry. Co., 175 Mo. App. 349; Meyers v. O'Bear Nestor Glass Co., 129 Mo. App. 556; Kube v. Northwestern Coal and Mining Co., 209 S. W. 614.   (2)   The court erred in refusing to direct a verdict for defendant at the close of plaintiff's evidence and at the close of all the evidence. Plaintiff's own evidence shows that he knew that the hook or tong was very dull and blunt, and that it was not in a proper condition for use, but nevertheless, plaintiff without complaint or protest to the defendant continued its use and therefore assumed the risk.   Pulley v. Standard Oil Co., 136 Mo. App. 172, 1. c. 175-76; Holloran v. Union Iron and Foundry Co., 133 Mo. 470; Leitner v. Grieb, 104 Mo. App. 173; Meyers v. O'Bear Nestor Glass Co., 129 Mo. App. 556.   (3)   The court erred in refusing to direct a verdict for the defendant at the close of plaintiff's evidence, and at the close of all the evidence in the case, because the record disclosed that plaintiff

used a very dull and blunt hook or tong, knowing that there was an extra hook that could be used, which amounted to the selection of an unsafe method of working in the case of a simple tool.  Reynolds v. City Ice and Storage Co. (supra), 184 S. W. 934, 1. c. 935; Holmes v. Bradenbough, 172 Mo. 53; Van Bibber v. Swift & Co., 228 S. W. 69.  (4)  The court erred in giving plaintiff's instruction, which covered the entire case, and directed a verdict for the plaintiff, for the reason that this instruction assumes the disputed fact that the tongs in question were dull.  Moon v. Transit Company, 247 Mo. 237; Clark v. Railroad Co., 242 Mo. 609; Wease v. Tool Co., 187 Mo. App. 716.  The instruction should not impliedly assume the existence of a disputed fact.  Stark v. Brygaman, 223 S. W. 946.  An instruction erroneous because assuming a vital fact in the case is not cured by another instruction.  Martin v. Woodlae, 226 S. W. 650.  (5)  The court erred in giving plaintiff's instruction which covered the entire case and directed a verdict for the plaintiff, because the instruction fails to negative the essential fact that it was not plaintiff's duty to report and take to the mechanic the tong or hook for sharpening.  Humphrey v. Lusk (supra), 196 Mo. App. 442; Murdock v. Dunham, 206 S. W. 915; Rissmiller v. St. Louis etc. Co., 187 S. W. 573; Davis v. Metropolitan St. Ry. Co., 185 S. W. 1170.

*Sam M. Phillip* for respondent.

(1)  There is no place in this case for the doctrine of assumption of risk, as contended for under Point 2 of appellant's brief.  Respondent's injury was caused by the negligence of appellant in failing to furnish respondent with a reasonably safe instrumentality with which to work.  The servant never assumes the negligence of the master.  Morgan v. Mining Co., 141 S. W. 735; Allen v. Quercus Lbr. Co., 190 Mo. App. 399, 190 S. W. 86; State ex rel. Quercus Lbr. Co. v. Robertson, 197 S. W. 79; Bane v. Irwin, 172 Mo. 316; Jewell v. Bolt &

Nut Co., 231 Mo. 194; George v. Railroad Co., 225 Mo. 406-413; McMurray v. Railroad Co., 225 Mo. 302; Patrum v. Railroad, 259 Mo. 109; Williams v. Pryor et al., 272 Mo. 613. The servant only assumes the risk of the employment after the master has exercised ordinary care. (2) The burden is on the defendant to establish the contributory negligence of the plaintiff. Morgan v. Zinc Co., 199 S. W. 590; Edington v. Railroad Co., 204 Mo. 61; Strickland v. Woolworth & Co., 143 Mo. App. 528, 127 S. W. 628; Kile v. Light Co., 149 Mo. App. 354, 130 S. W. 89; Liston v. Railroad Co., 149 Mo. App. 231; 130 S. W. 381; Holman v. Iron Co., 152 Mo. App. 672, 133 S. W. 389; Peppers v. Glass Co., 148 S. W. 401; Kiser v. Railroad Co., 188 Mo. App. 169, 175 S. W. 98; Behncke v. Mining Co., 189 Mo. App. 639, 175 S. W. 271; Martin v. Oil Co., 184 S. W. 127.

COX, P. J.—Action for damages caused by a tong or hook used in unloading logs from a flat car loosening its hold on the log, slipping out and striking plaintiff and breaking his arm. Judgment for plaintiff for $2000 and defendant appealed.

Error is assigned in refusing a peremptory instruction to find for defendant and in instructions given for plaintiff; that the verdict is excessive and misconduct of plaintiff's counsel in the closing argument.

To determine the propriety of the court's action in refusing a peremptory instruction to find for defendant will necessitate a review of plaintiff's testimony and for that purpose we adopt appellant's statement of facts as far as shown by plaintiff's evidence as follows:

"Plaintiff complains that defendant negligently furnished him with an instrument which was dangerous and unsafe in that defendant is alleged to have furnished the plaintiff with a tong or hook which was dull and blunt. The defendant was at said time, and had been for a long time prior thereto, engaged in the lumber and saw mill business at or near Poplar Bluff; plaintiff had been working for the defendant ten or eleven years; during

most of that time he had worked at the mill, but had done different jobs. Sometimes he ran the edger, sometimes the trimmer, sometimes the cut-off and sometimes the bolter. In fact, he did whatever he was called upon to do. On the day in question he was working on the log yard hooking tongs; however, this was not his regular work, and he was working this day as an extra tong hooker. He had been ordered to do this work by John Garman, who was authorized to give such order. He and a co-worker were engaged in pulling logs off of flatcars. The manner of pulling the logs from the flatcars was as follows: The plaintiff would place a tong in one end of the log and his co-worker would place a tong in the other end of the log. These tongs were at the end of a wire cable, which led to a crane, which in turn was operated by an engine. When the tongs were placed into the ends of the logs, the engineer in charge of the engine would be signaled to start the engine, and upon the engine starting and the crane being moved, the friction would be tightened, causing the points of the tongs to adhere to and stick in the ends of the log, and in this manner the log would be pulled off the car. The crane would pull the log around to any position desired. Each of the tongs were about eight or nine inches long, and had a point about three and one-half inches long when they were in the right kind of shape.

On the day in question the plaintiff had put his tong in his end of the log, the co-worker had likewise attached his tong to the other end of the log, and the engineer was signaled to draw the log off the flatcar. It was the bottom log of the load that was being drawn out to break the load. Shortly after the operation had started, the tongs slipped out and swung around and struck plaintiff on the left arm, causing him to sustain a simple fracture of the bone of the left arm, called the ulna.

Plaintiff's evidence disclosed that just after he had attached his tong to the log and the engine had started, he stepped back in front of a car loaded with logs immediately west; that he looked up and discovered that

the toggle chain, being the chain that holds the logs in position on the car, had been broken or unloosed; that he thereby discovered himself in a position of danger, fearing that the logs on this car would roll off and upon him; that he thereupon ran to the north and west and was so running when struck.

Plaintiff's witnesses testified that plaintiff's tong was very dull and blunt at the time; that it is necessary for the points on these tongs to be sharp in order to properly stick in the logs, and that dull tongs are more likely to fly out of the logs than sharp ones. One of plaintiff's witnesses testified that several days prior to the accident he had advised John Garman about the dull condition of the tong, and that Garman said that he would sharpen it, as he always did; that this witness had worked with these tongs up to within a day or so of plaintiff's injury, and the tongs had not been sharpened. That the tong in question was too dull to be whetted with a file, but needed to be heated and drawn out. It was shown that these tongs frequently become somewhat dull from knocking together against the rail on the car; that it is customary for the man working with the tongs to have a file and to whet the tongs on such occasions, but, however, when the tongs become too dull or blunt to be sharpened with a file, the tongs are taken to the blacksmith shop, where the mechanic, John Garman, heats them and draws them out to a point. Plaintiff's end of the log after the accident showed marks where the tong had pulled loose. One of the tongs was very dull and the other one was in just fairly good shape. Plaintiff was working with the very dull tong. Plaintiff stated that it was the duty of the regular tong hooker to see to it that the tongs were taken to the blacksmith's shop and sharpened; that it was not the duty of the extra man; that he was the extra man that day doing a tong hooker's work.

The plaintiff further stated that he was perfectly familiar with these tongs and familiar with their use; that he knew that his tong was very dull and that a very

dull tong was likely to fly loose from the log, but that he stuck it in there anyway. In answer to his counsel's question, however, on redirect examination, he stated that he thought he could do this work with safety and without being injured.''

There was also testimony that an extra tong was kept to be used while a dull one was being sharpened but the evidence of plaintiff was to the effect that he was working as an extra and had no duty resting on him to look after getting the dull hook sharpened. It was also shown that plaintiff had worked safely at this work about an hour and a half just before the accident complained of took place.

It is earnestly contended by appellant that the tool used by plaintiff was a simple tool and its use was thoroughly understood by him; that he knew of its dull condition and its likelihood to loosen its hold on that account and that he could have taken it to the mechanic and had it sharpened and since he did not, he assumed the risk. Also that he and the regular tong hooker whose place he was temporarily filling as well as the party who loosened the toggle chain on the other car of logs and thereby made it necessary for plaintiff to run into a position of danger as he did were fellow servants and that precludes a recovery in this case.

It will be observed that the injury was not inflicted while plaintiff was actually using or handling the tool but resulted from the tong slipping out after the plaintiff had attached it to the log and had gotten away to a place of safety, as he supposed, over by another loaded car. Had he been permitted to remain in his position by the other car, he would have been out of danger in case the tong he hooked should slip out, but having suddenly discovered that the logs on the car by which he was standing had been loosened by the removal of the chain which held them, he, thinking that by reason thereof these logs might, and probably would, roll off the car and strike him, he ran away to avoid that danger and while so running was necessarily thrown in a posi-

tion where he was struck by the tong hook when it came loose and flew around and struck him. By plaintiff's testimony, it is also shown that plaintiff was working as an extra and it was not his duty to attend to the sharpening of the tong hook but that duty devolved upon the regular tong hooker. These facts clearly distinguish this case from those cases cited by appellant in which recovery was denied because of the failure of the party using the tool, to do all that was required of him in relation to the tool or his choosing an unsafe way to use it when a safe way was equally open to him.

We do not think that the defendant can escape liability on the ground that the negligent act of permitting the tool with which plaintiff was required to work to become so dull as to be unsafe was the act of a fellow servant. If plaintiff's evidence is to be believed, and that was a question for the jury, then plaintiff was working as an extra and was not charged with the duty of observing and ascertaining when the tong hook needed sharpening and then see that it was sharpened. If, as he testified, that duty rested on the regular tong hooker, then he and the regular tong hooker were not fellow servants in relation to the sharpening of the tong hook, for a man charged with the duty of repairing tools and machinery is not a fellow servant with the property who works with the tools or operates the machinery. [Taber v. St. L., I. M. & S. R. Co., 210 Mo. 385, 397, 109 S. W. 764; O'Konski v. Pa. & Ohio Fuel Co. (Wis.), 90 N. W. 429; Adams v. Iron Cliff Co. (Mich.), 44 N. W. 270; Jackson v. Norfolk & W. R. Co. (W. Va.), 27 S. E. 278, 279.]

There is another reason why defendant cannot escape liability on account of the tong hook not having been sharpened when it should have been by the regular tong hooker. The duty of the master to use ordinary care to furnish his servants a reasonably safe place to work and reasonably safe tools with which to work is a duty resting upon the master directly and he cannot delegate it in a way to escape liability for negligence in relation

thereto.   The master may, of course, designate any person, regardless of his position or his relation to other employees, to perform that duty for him, but the person so designated while engaged in the performance of that duty stands in the shoes of the master and his action or want of action is chargable to the master the same as if the master had undertaken to perform the duty in person. [Williams v. Pryor, 272 Mo. 613, 620, 200 S. W. 53; Knorpp v. Wagner, 195 Mo. 637, 662, 93 S. W. 961.]

The evidence shows that after plaintiff had fastened the hook in the log he stepped away and was then in a position where he would not have been struck by the tong hook if he had remained there.  He, however, while in a place of safety from the danger of being struck by the tong hook, discovered that the toggle chain that held the logs on the car near which he was standing had been loosened, and he was then in danger of being hurt by the logs on that car rolling off and striking him.   To avoid this newly discovered danger, he was compelled to run away and in doing so was forced to go in the path of the loosened tong hook and was struck by it while running.   It is contended that the party who loosened the toggle chain and put plaintiff in danger of the logs rolling off of that car was a fellow servant of plaintiff and that prevents recovery.   The legal effect of this testimony was to explain how plaintiff came to be at the place where he was at the time he was struck and to show that he was rightfully there, but if we concede that the party who loosened the toggle chain at the time he did loosen it was a fellow servant, yet the most that can be said of the connection between that negligence and plaintiff's injury is that it concurred with the negligence of defendant in failing to furnish plaintiff a safe tool with which to work, and the defendant cannot escape liability on the ground that the negligence of a fellow servant concurred with its own negligence in causing the injury. [Cole v. St. Louis, 183 Mo. 81, 94, 81 S. W. 1138; Moriarty v. Schwarzschild & Sulzberger Co., 132 Mo. App. 650, 112 S. W. 1034; Dittrich v. American Mfg. Co., — Mo. App. —, 190 S. W. 1006, 1010.]

Defendant seeks to apply to this case what is known as "the simple tool doctrine," that is, that the condition of the tong hook and its liability to slip was well known to plaintiff and he had the opportunity to change it for another hook and therefore his continued use of it was contributory negligence as a matter of law. "The simple tool doctrine" as applied in this State is well explained in Williams v. Pryor, 272 Mo. 613, 625, 200 S. W. 53. The United States Supreme Court overruled the Supreme Court of this State in that case and reversed it in so far as it appears to abolish the distinction between contributory negligence and assumption of risk under the Federal Employers' Liability Act as applied to interstate commerce. [See Adverse Opinions U. S. Sup. Ct. of Dec. 1, 1920, at page 12.] But we do not understand that decision to affect the rule in Missouri in cases not arising under the federal act. The rule in this State is that even if the tool furnished is a simple one and its use and probable resultant danger therefrom are well understood by the servant, yet these facts do not absolve the master from the duty to furnish the servant with tools that are reasonably safe, and the servant does not assume any risk that results from the negligence of the master nor is he guilty of contributory negligence as a matter of law unless the danger in using the tool is so glaring that a man of ordinary prudence would not use it. Measured by this rule, the plaintiff cannot be held guilty of contributory negligence as a matter of law in this case. The danger of the use of this tong hook in the condition plaintiff found it when he went to work with it was not so clear as to require him to refuse to work with it. In fact, he did work with it safely for an hour and a half before it failed to perform its function properly. Under these circumstances it cannot be said that the danger was so clear that the plaintiff should have refused to work with it. It is also further shown, as heretofore stated, that plaintiff would not have been in the path of the loosened tong hook at the time but for the fact of his being placed in a position of danger from

logs rolling off another car and thereby being compelled to place himself in the path of the loosened tong hook in order to escape that danger.

Neither can it be said as a matter of law that plaintiff was negligent in not removing this dull tong hook and putting another in its place. His testimony was to the effect that he was not charged with any duty to have the hook with which he was ordered to work repaired. According to his testimony, he was under no obligation to change the hook. He was sent there to work with the hook furnished by defendant. His only choice was to work with it as he found it or refuse to work.

What we have already said will dispose of the question of the assumption of risk by plaintiff as a matter of law and we are of the opinion that the demurrer to the testimony was properly overruled.

The question of assumption of risk was submitted to the jury by an instruction asked by defendant and the jury having found for plaintiff, further consideration of that question is unnecessary.

Objection is made that Instruction No. 1 for plaintiff assumes that the tong hook was dull and was erroneous because the dullness of the tong hook was a disputed fact. That allegation was only disputed by the general denial of the answer. It was not disputed by the testimony. We do not think, however, that the instruction assumes that the tongs were dull. It uses this language: "If you further find and believe from the evidence that said tongs were caused to slip from said log on account of its point being dull, if you find such to be a fact from the evidence, and that such dull condition of said tongs was likely to cause it to slip from logs dragged or carried by them and thus endanger defendant's employees thereby and that said dangerous condition of said tongs, if any, was known to defendant, etc." We do not think this instruction would be understood by the jury to mean that they could find for plaintiff without finding that the hook was dull and that its dull condition caused it to slip.

210 M. A.—23

Another instruction for plaintiff contained the following language: "By 'ordinary care' as used in these instructions is meant that degree of care which would be used by a person of ordinary prudence under like or similar circumstances. By 'negligence' as used in these instructions is meant the absence of ordinary care *under the circumstances shown in evidence* (the Italics are ours)." Defendant contends that this instruction is erroneous because the use of the words *under the circumstances shown in evidence* was equivalent to a direct statement to the jury that the circumstances shown in evidence in this case amounted to negligence. We do not think they would so understand it.

The court at the request of defendant instructed the jury: "That the defendant was not an insurer of the safety of plaintiff nor was defendant required to furnish plaintiff absolutely safe tools with which to work, but before you can find for the plaintiff, you must believe from the evidence that defendant failed to exercise ordinary care to furnish plaintiff reasonably safe tools with which to work by negligently failing to keep the hooks in question properly sharpened." When these instructions are considered together, as they must be, we do not think the jury could have been misled.

Objection is made to the instruction on the measure of damages. This instruction told the jury that if they found for plaintiff "then in estimating his damages, they will take into consideration the physical injury inflicted, if any, and the bodily pain and mental anguish endured, if any, by plaintiff and in assessing his damages, you shall assess them at such sum as you shall believe from the evidence will reasonably compensate him for said injury received together with the suffering caused by reason of said injury, if any, and in a sum not to exceed Two-Thousand-Nine Hundred-Ninety-Nine Dollars." A casual reading of this instruction will show that it is not open to the objection levelled against it.

Misconduct of counsel for plaintiff in the closing argument is alleged. The counsel made the following

statement: "This suit is for $2999 in order to avoid—in order to anchor this suit in the state court and to keep it from being sent to the federal court." On defendant's objection, counsel for plaintiff said: "I desire to withdraw the remarks, your honor." The court then said: "You, gentlemen of the jury, in making up your verdict will entirely disregard this remark of counsel; and I suggest to counsel that you keep within the record." The statement of counsel was highly improper, but in view of what followed and the direction of the court to the jury to entirely disregard the statement of the counsel and the direction to counsel to stay within the record, we think the error was cured and the judgment should not be reversed on that ground. [Grace v. Missouri, K. & T. Ry. Co., 212 S. W. 41.]

Lastly it is contended that the verdict is excessive. The doctor who attended plaintiff testified that the injury was a simple fracture of the ulna which is the small bone of the forearm. That he was under treatment six or seven weeks and at the time of the trial it had healed perfectly as far as he could detect at the time. That there was nothing about that kind of a broken arm that permanently weakens it. The plaintiff testified that it was about eight weeks after the injury before the plaster paris cast was taken off. That during that time he suffered pain; at times it pained badly and at other times it would be more easy. That he still suffered pain under some circumstances. It would pain if he attempted to life anything and that he could not turn it over flat like he used to and that there was a knot or ridge across it. That at the time of the injury he was earning $3.50 per day. That he did nothing from November 27th to about March 1st and then he helped haul some wood for which he received $1.50 per day.

It is sometimes difficult for an appellate court to determine just what influences a jury in fixing the amount of damages in cases of this kind where compensation is allowed for physical pain and mental anguish. There is no standard by which compensation for physical or

mental suffering can be measured. This must of necessity be left to the discretion of the jury and the amount fixed by them will not ordinarily be interfered with unless the amount is so great as to appear unreasonable or there is some circumstance connected with the case that will indicate that the jury may have been induced in some improper way to increase the amount above what would appear to be reasonable under all the circumstances. We are not convinced that the amount of the damages assessed in this case is sufficient to justify a reversal on that ground.

Finding no reversible error, the judgment is affirmed. *Farrington, J.,* and *Bradley, J.,* concur.