**Harry F. SCHNEIDER, (Plaintiff) Respondent,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, (Defendant) Appellant.**

No. 30873.

St. Louis Court of Appeals.

Missouri.

Feb. 20, 1962.

Rehearing Denied March 19, 1962.

H. P. Tudor, Edward P. Burke, Strubinger, Tudor, Tombrink & Wion, St. Louis, for appellant.

Charles T. Herrmann, James J. Butler, Hough, Herrmann, Nichols, Hormberg & Filippine, Clayton, for respondent.

HARRY A. HALL, Special Judge.

This is an action for personal injuries by plaintiff, Harry F. Schneider, against the defendant, Southwestern Bell Telephone Company, as owner and occupant of the building in which plaintiff was installing air-conditioning equipment. Plaintiff received an electric shock when he started to connect an air-conditioning unit which had been placed on an exposed electric wire. The jury awarded plaintiff $10,000 damages and defendant has appealed, assigning as error (1) the court's failure to sustain its motion for directed verdict; (2) the giving of plaintiff's verdict-directing Instruction No. 6; and (3) the court's failure to sustain defendant's motion for new trial because of the excessiveness of the jury's verdict.

The facts show that defendant undertook to install combination air-conditioning and heating units in its downtown St. Louis building and employed three independent contractors to do separate portions of the work. Plaintiff's employer, Sodemann Heat and Power Company, handled the metal work and piping, including the delivery of the units in the building; E. C. Dorsch Electrical Company did the electrical work; and Woermann Construction Company did the building and carpentry work. Plaintiff and his helper, Charles High, positioned and connected the units, and prior to February 15, 1956, the date of the accident, they had installed between fifty and sixty units, which were made of metal and were connected to copper tubing in the walls, which led to a central cooling and heating system. The unit in question was some 40 inches high, 55 inches long, 10 inches wide, and weighed about 200 pounds. The Woermann Company had previously prepared the walls and cut the baseboards so the units would fit flush with the walls. The Dorsch Company, in doing the electrical work, had placed temporary wiring at various places throughout the building, including room 604, where plaintiff was injured. This wiring ran along the baseboard, and at the openings where the baseboard had been removed it ran along the floor. At the opening in question, the wire looped out on the floor some six inches from the wall.

Room 604 was used by radio technicians employed by A. T. & T. and contained a bank of wet batteries on metal racks placed some three feet from the wall and close to the unit in question. Plaintiff had been warned of the batteries and had covered them with an asbestos sheet, but no warning had been given concerning the wiring. Plaintiff and High connected two units on the south wall the day before the accident, and at that time the unit in question was standing three or four inches from the wall in the same position where it was when plaintiff was injured. Neither saw the temporary wiring in this room prior to the accident, and both stated it was dark where the unit was located. Nor did plaintiff notice the wire at the time he kneeled down on the floor to inspect the connections prior to soldering the coupling.

As he touched the copper connection, he received a shock which threw him against the battery rack and to the floor. His co-worker, Charles High, helped him from the room and he was taken to a doctor, who treated him. High inspected the unit immediately after the accident and stated "the wire was bare for one or one and a half inches and looked like they used scrap to put in there." It was "spliced and taped and looked like someone had taken a knife and torn it off and like it was done where the unit had been set down on it." The unit on testing registered an electrical charge of 110 volts where plaintiff had touched it.

The evidence does not disclose when the unit was placed in room 604, but it was sometime prior to February 14, the day before plaintiff was injured.

Defendant contends that plaintiff failed to make a submissible case in that the evi-

dence did not show that defendant had actual or constructive notice superior to plaintiff, or actual knowledge of the unsafe condition, or that defendant had negligently permitted bare temporary wiring at random on the floor in room 604.

■■■ The law is well settled that defendant, as owner and occupant of its building, has the duty to exercise ordinary care and diligence to have its building in a reasonably safe condition for the use of an employee of an independent contractor who occupies the position of a business invitee. Where such employee is engaged in working on defendant's premises, the owner has a nondelegable duty to warn him of any condition unknown to him that was not safe or could not be made safe. In McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co., Mo., 323 S.W.2d 788, 1. c. 794, where plaintiff, an employee of an independent paint contractor, was injured when he came in contact with an exposed 440 volt electric conduit while painting the McDonnell building, the court said:

> "McDonnell did have a nondelegable duty to Hartman's employee, Arbuckle, with respect to the condition of its premises where he was to work and certainly to warn him of any condition there, unknown to him, that was not safe or could not be made safe. ('The servant working on his master's premises is a business visitor and entitled to the protection of one,' Prosser, 374–376; and this obligation extends to the servants of an independent contractor working on the premises, Prosser, 374, note 6.)"

Ryan v. St. Louis Transit Co., 190 Mo. 621, 89 S.W. 865, 2 L.R.A.,N.S., 777; Szofran v. Century Electric Co., Mo.App., 255 S.W. 2d 443.

Our courts have described electricity "as one of the most dangerous agencies ever discovered by human science." See Geismann v. Missouri-Edison Electric Co., 173 Mo. 654, 73 S.W. 654, 1. c. 659, 661, where, in holding the defendant light company liable for the death of a sign man who was shocked when a support wire of a street sign he was removing from a building fell across defendant's electric line which had worn and faulty insulation, the court said:

> "* * * and, owing to that fact, it was the duty of the electric light company to use every protection which was accessible to insulate its wires at all points where people have the right to go, and to use the utmost care to keep them so; and for personal injuries to a person in a place where he has a right to be, without negligence upon his part contributing directly thereto, it is liable in damages. * * *

> "It was not necessary, in order to plaintiff's recovery, to prove that at the exact point where the contact occurred the insulation was off the wire. If the defective insulation caused the injury without fault on the part of plaintiff, as he had the right to be where he was at the time of the injury, that was sufficient."

In Ryan v. St. Louis Transit Co., supra, deceased, a pipe fitter employed by an independent contractor, was installing water pipe in defendant's building beneath several overhead electrical wires on which the insulation was deteriorated when he received an electric shock. The court held: "* * * the duty devolved upon the defendant of keeping the electrical wires near which the deceased was required to work in the performance of his duty in installing the oil pipes, so insulated and protected as to be safe for the deceased to work in their vicinity."

■■■ Defendant employed Dorsch to install temporary wiring throughout the building, which was placed along the baseboard and ran on the floor across the openings where the baseboard had been removed for the cooling units. Unless secured, the wire could loop out away from the wall where it was subject to being

stepped upon or otherwise damaged and the insulation broken. It extended some six inches out from the wall and was spliced and taped and looked as though scrap end had been used, and it was exposed for an inch or inch and one-half. Defendant's duty under the law to provide a safe place to work cannot be avoided by employing independent contractors, since such duty is one that cannot be delegated.

▆ Plaintiff was where he had a right to be and was proceeding to connect this unit exactly the same as he had connected some fifty to sixty units during the five months of his employment. If, as charged, the defendant permitted partially bare temporary wiring to be placed on the floor where plaintiff was required to be in the performance of his duties, it was negligent. The evidence of plaintiff supported this contention, and we rule plaintiff made a submissible case.

Defendant claims error in plaintiff's verdict-directing Instruction No. 6 for (a) failure to negative its defenses of assumption of risk and negligence of fellow servant; (b) wrongfully placing a duty on defendant constantly to inspect the work of competent independent contractors to determine if their work rendered the premises unsafe; and (c) failing to include a finding that the dangerous condition would not have been known to its invitees in the exercise of ordinary care.

This instruction told the jury the defendant had "the duty * * * to exercise ordinary care to keep and maintain its premises * * * in a reasonably safe condition for the use of its invitees," and to "exercise ordinary care to warn * * * of any dangerous things or conditions present in or about its premises" and if they further found plaintiff suffered an electric shock as he was preparing to install an air-conditioning unit and "was in the exercise of ordinary care for his own safety" and that defendant "permitted some partially bare temporary wiring to be placed at random on the floor"; that the air-con-

ditioning unit was "resting on such partially bare exposed temporary wiring"; "that defendant failed to warn plaintiff of the danger of the partially bare temporary wiring", that "defendant was negligent in permitting the partially bare wire to be placed" on the floor and was "negligent in failing to warn plaintiff of the presence of such partially bare temporary wiring" and that if "such negligence directly caused" plaintiff's injuries, their verdict should be for plaintiff.

Defendant submitted its defenses of negligence of a fellow servant, plaintiff's assumption of risk and contributory negligence in its instructions 2, 3, and 4, which were given by the court. Its instruction No. 2 advised the jury that defendant would not be liable if the plaintiff was injured as the result of the negligence of a fellow servant. Defendant's instruction 3 told the jury that the plaintiff "assumed the risks from contact with the wires in question so far as such risks were as obvious or discernible to him as they were to the defendant or its employees, by the exercise of ordinary care." Its instruction 4 directed a verdict for defendant if plaintiff "carelessly and negligently failed to keep a sufficient lookout for the presence of live electric wires touching the unit."

The cause was submitted after December 22, 1959, when the rule announced in Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, became effective, and plaintiff had the duty to negative defendant's affirmative defenses to avoid conflicting submissions. In the Moore case the court did not prescribe the manner in which such negation should be accomplished. However, in a subsequent opinion, Martin v. Kansas City, Mo., 340 S.W.2d 645, l. c. 649, that court held that where plaintiff's instruction required the finding that "plaintiff * * * was in the exercise of ordinary care for his own safety", it sufficiently negated and did not conflict with the contributory negligence submission of the defendant, saying:

"A further contention of error is made in connection with plaintiff's Instruction No. 1. It is said the instruction is erroneous in failing to require the finding that plaintiff did not know the hole was there, or, in the exercise of ordinary care, could not have seen the hole in time to avoid it. It is urged that this issue was an essential factual issue and should have been specifically included in plaintiff's principal verdict-directing Instruction No. 1. But the instruction did submit the negative of plaintiff's contributory negligence by requiring the finding that 'the plaintiff George Martin was at all times in the exercise of ordinary care for his own safety'; and at defendant's instance the trial court gave Instruction No. 11 which directed a verdict for defendant if the jury found 'that plaintiff saw, or, by the exercise of ordinary care, could have seen said hole in the parkway * * * and if you further find that plaintiff knew, or, in the exercise of ordinary care, could have known that said hole * * * rendered said parkway dangerous and unsafe for use by one in the exercise of ordinary care for his own safety, in time to have avoided said hole in safety by the exercise of ordinary care, but failed so to do * * *'. Plaintiff's verdict-directing instruction, as noted supra, negatived plaintiff's contributory negligence, and defendant's Instruction No. 11 submitted contributory negligence. See now Moore v. Ready Mixed Concrete Co., Mo.Sup., 329 S.W.2d 14, and Shepard v. Harris, Mo.Sup., 329 S.W.2d 1. We see no prejudicial fault in plaintiff's instruction, No. 1, in any respect of which defendant complains. It would seem the instructions, read together, fairly submitted plaintiff's case and defendant's defense."

See also Van Buskirk v. Missouri-Kansas-Texas Railroad Co., Mo., 349 S.W.2d 68; Taylor v. Hitt, Mo.App., 342 S.W.2d 489.

Plaintiff's charge of negligence was that the defendant permitted exposed temporary wiring to be placed on the floor of its building where plaintiff was required to work and its failure to warn plaintiff thereof, and this was the negligence submitted in his instruction. It is immaterial to the issues whether the wire was actually placed there by an employee of an independent contractor, as shown by the evidence, or by an employee of defendant. A finding that defendant permitted it is equivalent to a finding that defendant knew it. Goodin v. Evens & Howard Fire Brick Co., Mo.App., 249 S.W. 736; Morton v. Hiram Lloyd Bldg. & Const. Co., 280 Mo. 360, 217 S.W. 831.

■ The defendant's duty to furnish a safe place for plaintiff to work, being non-delegable, applies equally whether the dangerous consideration be caused by a fellow servant or an independent contractor, since the law will not permit defendant to shift this responsibility to anyone else. Warner v. Oriel Glass Co., 319 Mo. 1196, 8 S.W. 2d 846, 60 A.L.R. 448; Soltesz v. J. H. Belz Provision Co., Mo., 260 S.W. 990; Williams v. Pryor, 272 Mo. 613, 200 S.W. 53.

■ The law has long been settled in Missouri that assumption of the risk relates only to those risks usual and incident to the employment and not to risks arising from the master's negligence. Warner v. Oriel Glass Co., supra; Williams v. Pryor, supra.

■ Instructions are to be considered in combination and as an entirety, and the courts will look to the whole charge to ascertain if a jury composed of ordinarily intelligent laymen, reading all the instructions together, would not be misled. Elmore v. Kansas City, Mo.App., 333 S.W.2d 795; Machens v. Machens, Mo.Sup., 263 S.W.2d 724.

■ Under the instructions the jury found that plaintiff was in the exercise of ordinary care for his own safety and re-

jected defendant's submission that plaintiff was negligent in failing to see or keep a lookout for exposed wire or negligently assumed the risk of an obvious danger. As pointed out in Martin v. Kansas City, supra, the instructions, read together, fairly submitted plaintiff's case and defendant's defenses, and we find no prejudicial error in the giving of plaintiff's instruction No. 6. Defendant's contentions in this respect are therefore overruled.

 A consideration of defendant's complaint that the jury's award of $10,000 was so excessive as to indicate bias and prejudice of the jury requires a review of the evidence in support of plaintiff's claim.

The evidence discloses that plaintiff was 55 years old when he was injured and had engaged in physical work as a pipe fitter some 32 years. In 1947 he suffered a disc injury in his low back, which kept him off work some five months and because of which he was paid $2,475.00 in Workmen's Compensation. He recovered and returned to his regular work, but did wear a back brace off and on for a year, and he continued to go to an osteopath for a weekly back massage, until his present injury. He worked steadily at his trade, and had been employed on defendant's job some four and a half months.

This accident aggravated the condition and pain in his back and caused pain and numbness in his right leg, which was still present at the time of the trial some four years later. In addition, he has developed a Parkinsonian syndrome manifested by a tremor in the upper extremities, his head and face, which is progressive and will gradually become worse. This can be helped by medicine but cannot be cured. The accident was not the total cause of the Parkinson's disease, but it did aggravate and excite its dormant condition, and it will get worse under stress, strain and anxiety, and with time. His back condition is chronic. He also has developed a functional nervous disorder or physiological change in his nervous system and emotional status secondary to his injury. About five weeks after the accident, he tried to work and was forced to quit after four days because of his shaky condition. Two months later he tried to work again and had to quit after five days for the same reason. He began working steadily in August, 1956, as a foreman and supervisor, which did not require physical exertion. There was evidence that plaintiff will not be physically able to do the work of a pipe fitter.

The permanent effects of plaintiff's injuries were presented fully to the jury, and after considering the record we find that the verdict was not excessive and so rule against defendant on this contention.

The judgment of the trial court is accordingly affirmed.

ANDERSON, P. J., and WOLFE, J., concur.

RUDDY, J., not participating.